Hoffman v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-246-CR

        STEPHEN SCOTT HOFFMAN,

                                                                                       Appellant
        v.

        THE STATE OF TEXAS,

                                                                                       Appellee
 

From the 249th District Court
Somervell County, Texas
Trial Court # 228
                                                                                                    

O P I N I O N
                                                                                                    

          Appellant Stephen Scott Hoffman was indicted on one count of aggravated sexual assault
and two counts of indecency with a child, all three counts stemming from the same incident. Tex.
Penal Code Ann. § 21.11, 22.021 (Vernon 1994 & Supp. 1996). Hoffman entered an open plea
of guilt, which preceded a trial before the jury on punishment. Punishment was assessed by the
jury at 32 years' confinement and no fine on the aggravated sexual assault count and ten years'
confinement and a $10,000 fine on each of the indecency counts.
          Hoffman raises five points on appeal: (1) the trial court committed fundamental error in
permitting a convicted felon to sit on the jury; (2) the evidence was factually insufficient to sustain
his conviction on all three counts; (3) and (4) the trial court erred in overruling his challenges for
cause against two of the jurors; and (5) the trial court committed fundamental error in permitting
the State to make an improper jury argument. We affirm.
I. Procedural and Factual Background
          At and before the time of the offenses, Hoffman was working as a youth minister at a
church in Glen Rose. The victim's mother approached Hoffman and asked him if he would be
able to visit with her son who was having behavioral and emotional problems. Hoffman agreed
to help the victim and visited with him on several occasions over a period of a couple of months. 
At some time during these few months, Hoffman asked the victim's mother if she would allow the
victim to spend the night at his apartment. The mother, believing from Hoffman that at least one
other child would be spending the night with her son, gave her consent. On or about May 15,
1992, the victim, alone, spent the night at Hoffman's apartment and during that evening he and
Hoffman engaged in homosexual conduct. The victim reported the incident about a year and a half
later to a counselor at a home for troubled boys where the victim was living at the time.
II. Whether the Sitting of a Convicted Felon on Hoffman's
 Jury Constituted Fundamental Error

          In his first point of error Hoffman complains that his conviction must be reversed because
a convicted felon sat on his jury, in violation of his rights under the Texas Constitution. See Tex.
Const. art. XVI, § 2. Hoffman's argument is without merit.
          During voir dire, venireman Darrell Point stated that he had been convicted of the felony
of burglary approximately twenty-nine years earlier when he was 17 years old. He further stated
that he received a probated three-year sentence for the offense, which he successfully completed. 
Neither the State nor Hoffman offered any objection to Point at any time during voir dire.
          At the hearing on Hoffman's motion for new trial, Point further stated that his burglary
conviction occurred in Champaign, Illinois in 1965 and that he had never been pardoned for the
offense. He did repeat, however, that he had successfully completed his probation.
          The State in its brief argued that Point could sit on a jury in Texas because, under Illinois
law, a felon's loss of his ability to sit on a jury upon conviction is returned to him if he
successfully completes the terms of his probated sentence. See Ill. Const. art. III, § 2; Ill.
Const. art. XIII, § 1; Ill. Rev. Stat. ch. 730, ¶ 5/5-5-5 (West 1992).
          The first issue to be addressed is whether the State of Texas under the Full Faith and Credit
Clause of the United States Constitution must recognize any restoration of civil rights that may
have been afforded Point by the State of Illinois upon the completion of his probation. U.S.
Const. art. IV, § 1.
          There is authority that under the Full Faith and Credit Clause one state need not recognize
a pardon issued by a sister state for an offense committed in that sister state. The United States
Supreme Court in Carlesi v. New York, 233 U.S. 51, 34 S.Ct. 576 (1914), addressed the issue of
whether the State of New York was required to recognize a pardon granted by the President of the
United States to a person previously convicted of a federal felony.


 The Court concluded that the
presidential pardon operated only with regard to the sovereign that issued it and, therefore, the
pardon had no "extraterritorial effect." The Seventh Circuit later applied the converse of the
Court's ruling to conclude that the United States was not required to recognize a pardon granted
by the governor of Montana to a person who had previously been convicted of a felony in that
state. Thrall v. Wolfe, 503 F.2d 313, 316 (7th Cir. 1974), cert. denied, 420 U.S. 972, 95 S.Ct.
1392 (1975). The Thrall holding has been accepted in a number of jurisdictions. See White v.
Thomas, 660 F.2d 680, 685 (5th Cir. 1981) (Texas sheriff not barred from firing deputy who
failed to indicate at the time of hire that he had been convicted of a felony in California even
though that conviction was later expunged), cert. denied, 455 U.S. 1027, 102 S.Ct. 1731 (1982);
Yacovone v. Bolger, 207 U.S. App. D.C. 103, 645 F.2d 1028, 1036 (United States Postal Service
in deciding whether to employ someone convicted of shoplifting in Vermont was not required to
recognize Vermont's pardon of the offense), cert. denied, 454 U.S. 844, 102 S.Ct. 159 (1981);
Groseclose v. Plummer, 106 F.2d 311, 313-14 (9th Cir.) (California not required to recognize
Texas pardon), cert. denied, 308 U.S. 614, 60 S.Ct. 264 (1939); Delehant v. Board on Police
Standards and Training, 855 P.2d 1088, 1092 (Or. 1993) (Oregon not required to recognize
Idaho's expunction of defendant's Idaho conviction); State v. Edmondson, 818 P.2d 855, 858-59
(N.M. App.), cert. quashed, 818 P.2d 419 (N.M. 1991) (New Mexico not required to recognize
Texas' expunction of defendant's Texas conviction); In re Jeb F., 558 A.2d 378, 379 (Md. 1989)
(State of Maryland not required under Full Faith and Credit Clause to admit into its bar a person
convicted of armed robbery in New York even though that person had received a certificate of
relief in New York absolving him of all disabilities resulting from his conviction); Ballard v.
Board of Trustees of Police Pension Fund of City of Evansville, 452 N.E.2d 1023, 1025-26 (Ind.
App. 1983) (Indiana not required to recognize Arizona's expunction of Arizona conviction in
deciding whether to continue policeman's pension); Kentucky Bar Ass'n v. Signer, 533 S.W.2d
534, 536 (Ky. 1976) (Kentucky Bar Association not required to disbar an attorney simply because
he had been disbarred in Ohio). Integral to many of these courts' reasoning is that one state is not
barred from prosecuting a defendant for the same offense which a sister state tried him, assuming
both states have jurisdiction over the defendant in the cause, under the dual sovereign doctrine. 
See Turley v. Wyrick, 554 F.2d 840, 842 (8th Cir. 1977), cert. denied, 434 U.S. 1033, 98 S.Ct.
765 (1978). It is thought that if a second state could subsequently try the defendant for the offense
notwithstanding the first state's final disposition of the case, then obviously the second state would
not be bound by the first state's pardoning of the offense.
          Other jurisdictions, including one of the appellate districts in Texas, however, have ruled
that the law of comity requires that states recognize the sister state's restoration of the convict's
civil rights. See Wickizer v. Williams, 173 S.W. 288, 290-91 (Tex. Civ. App.—Austin 1914)
(pardon for felony committed in Mississippi by Mississippi authorities removes disability of person
to sit on jury in Texas); United States v. McMurrey, 827 F.Supp. 424, 425-26 (S.D. Tex. 1993)
(United States required to recognize Governor of Oklahoma's pardon of defendant's prior
Oklahoma conviction); People v. Willis, 435 N.Y.S.2d 38, 39 (N.Y. App. Div. 1981) (New York
would not consider a Texas felony conviction for enhancement purposes where Texas would not
use the same conviction for enhancement under Texas law), compare People v. Dippolito, 452
N.Y.S.2d 655, 657-58 (N.Y. App. Div. 1982) (New York could use a misdemeanor conviction
from California for enhancement purposes where New York would punish the same offense as a
felony); People v. Terry, 390 P.2d 381, 388-89 (Cal.), cert. denied, 379 U.S. 866, 85 S.Ct. 132
(1964), compare People v. Dutton, 71 P.2d 218, 219-20 (Cal.), cert. dism'd, 302 U.S. 656, 58
S.Ct. 365 (1937).
          In determining whether Texas law or Illinois law should control the decision of whether
Point was qualified to sit on Hoffman's jury, the Full Faith and Credit Clause requires a weighing
of the conflicting public policies at issue. Hughes v. Fetter, 341 U.S. 609, 611, 71 S.Ct. 980, 982
(1951); see Sun Oil Co. v. Wortman, 486 U.S. 717, 730-34, 108 S.Ct. 2117, 2126-28 (1988). 
The conflicting policies may be those between the two states involved in the case, or, more
simply, a battle between the forum state's desire to continue its own public policy versus the
state's obligation to further the principle of comity among the several states. Hughes, 341 U.S.
at 611-12, 108 S.Ct. at 982. The forum state need only recognize its sister state's public acts if
the balance of the competing public policies so dictates. See id. As the United States Supreme
Court wrote, "[F]ull faith and credit does not automatically compel a forum state to subordinate
its own statutory policy to a conflicting public act of another state; rather, it is for [the deciding
court] to choose in each case between the competing public policies involved." Id.



          There are purportedly three competing public policies at issue in the case before us. The
first is the wish of the state of Texas to preserve the integrity of its jury system by precluding
convicted felons from sitting on juries. The second is the expressed desire by the State of Illinois
to restore to persons convicted of felonies in its criminal courts their ability to sit on a jury upon
the successful completion of their probated sentences. And the third is the obligation of Texas as
a member of the United States of America to further the principle of comity among the states.
a. Texas Law
          Without question, the State of Texas has a great interest in protecting against the pollution
of its jury system by excluding from jury service those persons whose moral status has been
judicially established as criminal. Amaya v. State, 87 Tex. Cr. R. 160, 220 S.W. 98, 99 (1920);
see R.R.E. v. Glenn, 884 S.W.2d 189, 193 (Tex. App.—Fort Worth 1994, writ denied). But what
is not clear is whether Texas law has determined that such pollution necessarily results from the
seating on jury panels persons whose prior criminal convictions have been set aside upon these
persons' successful completion of their probated sentences. 
          Article 42.12, section 20, of the Code of Criminal Procedure provides that a judge may
set aside the verdict against a criminal defendant and dismiss the charges that had been made
against him once he successfully completes his sentence of community supervision. Tex. Code
Crim. Proc. Ann. art. 42.12, § 20 (Vernon 1996).


 
          Until recently, Texas courts had unanimously held that article 42.12, section 20, operated
to restore to a convicted felon his ability to sit on a jury once he successfully completed the terms
of his probation. Walker v. State, 645 S.W.2d 294, 295 (Tex. Crim. App. 1983); Payton v. State,
572 S.W.2d 677, 678-79 (Tex. Crim. App. 1978) (on rehearing); Smith v. State, 859 S.W.2d 463,
464 (Tex. App.—Fort Worth 1993, pet. ref'd); Day v. State, 784 S.W.2d 955, 956 (Tex.
App.—Fort Worth 1990, no pet.). The Fort Worth court, however, in Glenn, sitting in its civil
capacity, held the contrary. Glenn, 884 S.W.2d at 193. The Glenn court held that under the
Texas Constitution only the executive branch of the government is provided the authority to return
to a convicted felon the civil rights taken away from him as a result of his conviction. Id.; see
Tex. Const. art. IV, § 11(b) (1876, amended 1989). Therefore, held the court, the legislature
is constrained from enacting any statutes which permit either itself or the judiciary to return a
convicted felon his civil rights. Id.
          We disagree with the Fort Worth court that article 42.12, section 20, unconstitutionally
infringes upon the executive branch's exclusive authority to restore a convicted felon's civil rights. 
Article IV, section 11(b), of the Texas Constitution may grant the exclusive power to pardon to
the executive branch; however, the district courts of Texas have the constitutional and statutory
authority from the moment of indictment until the time a defendant completes the terms of his
probation to dismiss the charges against him. This is an authority distinctively different than the
power of the executive to pardon, albeit with a similar result—the restoration of the person's civil
rights. We will explain our reasoning in further detail below.
          The jurisdiction of Texas courts is conferred solely by the Texas Constitution and state
statutes. Chenault v. Phillips, 914 S.W.2d 140, 141 (Tex. 1996); Curry v. Wilson, 853 S.W.2d
40, 45 (Tex. Crim. App. 1993). Article V, section 8, of the Texas Constitution and article 4.05
of the Code of Criminal Procedure grant original jurisdiction to the district courts in all felony
criminal cases. Tex. Const. art. V, § 8; Tex. Code Crim. Proc. Ann. art. 4.05 (Vernon Supp.
1996); Boyle v. State, 820 S.W.2d 122, 139 (Tex. Crim. App. 1989), cert. denied, — U.S. —,
112 S.Ct. 1297 (1992). Once attached, the district court has the authority to determine all
essential questions and to do any and all things with reference thereto authorized by the
Constitution and statutes, or permitted the district courts under established principles of law. 
Garcia v. Dial, 596 S.W.2d 524, 527-28 (Tex. Crim. App. [Panel Op.] 1980) (orig. proceeding)
(quoting Cleveland v. Ward, 116 S.W. 1, 285 S.W. 1063, 1069 (Tex. 1926)). "A Court's having
possession and jurisdiction of a case, that jurisdiction embraces everything in the case and every
question arising which can be determined in the case, until it reaches its termination and the
jurisdiction is thereby exhausted." Id. at 528 (emphasis in original).
          Among the district court's several powers is the authority to dismiss an indictment or
information against a convicted felon once he has successfully completed the terms of his
probation. Tex. Code Crim. Proc. Ann. art. 42.12, § 20(a); see also Tex. Code Crim. Proc
Ann. art. 32.02 (Vernon 1989) (authority of district court to dismiss indictment upon motion by
the State); State v. Frye, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995) (district court has
authority to dismiss indictment without the State's consent when defendant's rights under U.S.
Const. amend VI are violated); State v. Johnson, 821 S.W.2d 609, 612 n.2 (Tex. Crim. App.
1991) (listing other situations where district court may dismiss an indictment without the consent
of the State). Article IV, section 11A, of the Texas Constitution reads:
The Courts of the State of Texas having original jurisdiction of criminal actions shall have
the power, after conviction, to suspend the imposition or execution of sentence and to place
the defendant upon probation and to reimpose such sentence, under such conditions as the
Legislature may prescribe.

Tex. Const. art. IV, § 11A. Article 42.12, section 20(a), reads in relevant part:
 
If the judge discharges the defendant under this section, the judge may set aside the verdict
or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint,
information or indictment against the defendant, who shall thereafter be released from all
penalties and disabilities resulting from the offense or crime of which he has been
convicted or to which he has pleaded guilty[.]




Tex. Code Crim. Proc. Ann. art. 42.12, § 20(a). Moreover, if the defendant should during the
period of his community supervision violate the conditions by which he is permitted to remain on
community supervision, then the district court may revoke his "probated" sentence and order him
to serve the entirety, or a lesser length of time if the court in its discretion believes such reduction
is warranted, of his sentence in prison. Tex. Const. art. IV, § 11A; Tex. Code Crim. Proc.
Ann. art. 42.12, § 23(a) (Vernon Supp. 1996); see Ex parte Blume, 618 S.W.2d 373, 375-76
(Tex. Crim. App. 1981) (sentences under probation are not final convictions under Texas law);
Ex parte Murchison, 560 S.W.2d 654, 656 (Tex. Crim. App. 1978); Skillern v. State, 890 S.W.2d
849, 883 (Tex. App.—Austin 1994, no pet.); Dominque v. State, 787 S.W.2d 107, 108-09 (Tex.
App—Houston [14th Dist.] 1990, pet. ref'd, untimely filed). The authority of the district court
to revoke the defendant's community supervision at any time indicates that the trial court retains
jurisdiction over the defendant until he successfully completes the entire term of his probated or
his community supervision sentence.
          The facts that the district court (1) possesses the authority to dismiss the criminal charges
against and (2) retains jurisdiction over a criminal defendant throughout the duration of his term
of his probation or community supervision demonstrate that the district court does not exceed its
constitutional and statutory powers when it dismisses the criminal charges against a defendant
upon the successful completion of his probation or community supervision. We find this authority
granted to the district court by article 42.12, section 20, differs from the constitutional authority
of the executive branch to pardon a criminal defendant after conviction. Therefore, we disagree
with the Fort Worth Court in Glenn that article 42.12, section 20, attempts to grant to the judiciary
and the legislature greater authority than the Texas Constitution allows.
          The State of Texas, then, does not have a strong public policy against permitting persons
who have previously been convicted of felonies from sitting on juries if they successfully complete
the terms of their community supervision or probation and the trial court then dismisses the
criminal charges against them.
b. Illinois Law
          Our research has uncovered no appellate opinions from Illinois or any other jurisdiction
on whether a person convicted of a felony in Illinois who then successfully completes his probated
sentence is qualified to sit on a jury in Illinois. We are aware, however, that the Illinois
legislature has determined that a conviction for criminal offenses shall not result in the person's
loss of civil rights except as expressly provided by the legislature. Ill. Rev. Stat. ch. 730, ¶
5/5-5-5. Chapter 730, paragraph 5/5-5-5(a), of the Illinois Revised Statutes provides, "Conviction
and disposition shall not entail the loss by the defendant of any civil rights, except under this
section and Sections 29-6 and 29-10 of The Election Code, as now or hereafter amended." Id. 
Chapter 730, paragraph 5/5-5-5, goes on to disqualify from public office in Illinois those people
who have previously been convicted of a felony; to disenfranchise prisoners until they are released
from prison; and to restore to convicted felons their lost license rights, except for motor vehicle
licenses, upon completion of their sentence or probation, unless the state determines that such
restoration is not in the public interest. Ill. Rev. Stat. ch. 730, ¶ 5/5-5-5(b)-(d). Sections 29-6
and 29-10 of the Election Code concern the right of persons convicted of election fraud and other
related crimes to hold public office. Ill. Rev. Stat. ch. 10, ¶ 5/29-6, 29-10 (West 1993).
          It also appears that under Illinois law a person's civil rights cannot be taken away until he
is convicted. See Ill. Const. art. III, § 2; Ill. Const. art. XIII, § 1. It is settled law in Illinois
that a probated sentence does not constitute a conviction unless that probation is later revoked. 
People v. DuMontelle, 374 N.E.2d 205, 208 (Ill. 1978).
          We are also aware that the Illinois legislature has listed the several requirements for jury
service in its state. To sit on a jury in Illinois, one must be at least 18 years old, inhabit the
county in which the trial is taking place, be a citizen of the United States, and be "[f]ree from all
legal exceptions, of fair character, of approved integrity, of sound judgment, well informed, and
able to understand the English language, whether in spoken or written form or interpreted into sign
language." Ill. Rev. Stat. ch. 705, ¶ 305/2 (West Supp. 1996). There is no case law of which
we are aware indicating that a person who completes his probated sentence on a felony charge will
necessarily have a character that is less than "fair" have an "unapproved integrity." One
commentator has suggested that a consideration of this matter should be undertaken by the trial
court on a case-by-case basis. See Decker, John F., Collateral Consequences of a Felony
Conviction in Illinois, 56 Chi.-Kent L. Rev. 731, 741 (1980); see also People v. Hyche, 396
N.E.2d 6, 11 (Ill. 1979) (the court properly exercises its discretion in determining whether a
venireman is qualified to sit on a jury).
          Hoffman, in a letter brief, argues that Illinois law prior to 1970, the year in which the State
of Illinois adopted a new constitution to replace the previous 1870 version, disqualified convicted
felons from sitting on juries. He asserts that Point completed his probated sentence prior to 1970
and, therefore, we should apply the Illinois law that existed at the time.
          Hoffman contends that there was no restoration of a person's civil rights in Illinois prior
to 1970. Hoffman may be correct in his assertion, but he has failed to demonstrate that an Illinois
citizen became disqualified to sit on a jury prior to 1970 if he received and completed a probated
sentence. Hoffman provides us a copy of article VII, sections 1 to 7, of the 1870 Illinois
Constitution. Ill. Const. art. VII, §§ 1-7 (1870). The only reference to a loss of any civil rights
upon conviction for a criminal offense in these sections is located in section 7. Article VII, section
7, merely disenfranchises those persons convicted of "infamous crimes." Ill. Const. art. VII,
§ 7 (1870). The right to sit on a jury, however, differs from the right to vote. Moreover, as
indicated above, a person who receives a probated sentence is not considered to have received a
final judgment of conviction unless his probation is later revoked. See DuMontelle, 374 N.E.2d
at 208.



          Hoffman also cites article IV, section 4, of the Illinois Constitution of 1870. Article IV,
section 4, disqualifies from service in the Illinois legislature those persons who have been
convicted of bribery, perjury, or other infamous crimes, and those persons who had been entrusted
with public funds but later failed to account for the full amount entrusted to them. Ill. Const.
art. IV, § 4 (1870). Article IV, section 4, like article VII, section 7, fails to address the ability
of an Illinois citizen to sit on a jury.
          Having reviewed Illinois law on the issue, it is our opinion that a person in the State of
Illinois who successfully completes the terms of a probated sentence is not disqualified from sitting
on a jury in Illinois. Therefore, Illinois, like Texas, does not have a public policy against persons
who have successfully completed their probated sentences from sitting on juries. As neither state
would require such disqualification, then neither will the Full Faith and Credit Clause of the
United States Constitution.
          Notwithstanding our disposition on the merits of Hoffman's complaint in his first point,
we also hold that he failed to preserve his complaint for appellate review. Hoffman does not
dispute that he failed to object to the trial court's seating of Point on his jury. See Tex. R. App.
P. 52(a). Nevertheless, Hoffman argues that the seating of Point, a "convicted" felon, on his jury
constituted fundamental error. As previously discussed, however, Point was not disqualified from
sitting on Hoffman's jury. Therefore, not only was there no fundamental error, there was no error
at all. Tex. R. App. P. 52(a); see Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993);
see also Day, 784 S.W.2d at 957. Hoffman failed to preserve his complaint for our review.
          Assuming the complaint was preserved and error did result, a statute recently enacted by
our legislature applicable to this case requires us to conclude that the error was not reversible. 
Article 44.46 of the Code of Criminal Procedure provides:
A conviction in a criminal case may be reversed on appeal on the ground that a juror in the
case was absolutely disqualified from service under Article 35.19 of this code only if:
 
(1) the defendant raises the disqualification before the verdict is entered; or
 
(2) the disqualification was not discovered or brought to the attention of the trial
court until after the verdict was entered and the defendant makes a showing of
significant harm by the service of the disqualified juror.

Tex. Code Crim. Proc. Ann. art. 44.46 (Vernon Supp. 1996).

          Article 35.19 reads:
 
No juror shall be impaneled when it appears that he is subject to the second, third
or fourth cause of challenge in Article 35.16, though both parties may consent.

Tex. Code Crim. Proc. Ann. art. 35.19 (Vernon 1989). Under the second cause of challenge
under article 35.16, a venireman may be stricken for cause if "he has been convicted of theft or
any felony." Tex. Code Crim. Proc. Ann. art. 35.16(a)(2) (Vernon 1989).
          The record is clear that Hoffman was made aware of venireman Point's conviction for
burglary prior to the entering of the verdict and that Hoffman failed to raise the issue of Point's
alleged disqualification prior to that time. Therefore, by virtue of article 44.46, Hoffman's
conviction may not be reversed on the ground that Point was not qualified to sit on his jury. Tex.
Code Crim. Proc. Ann. art. 44.46
          The Glenn court in dictum stated that Article 44.46 is probably unconstitutional because
a verdict of guilt rendered by a jury of which one of its members was a convicted felon would be
void. Glenn, 884 S.W.2d at 193. We, however, disagreed with the Fort Worth court that a
person who successfully completes the terms of his probated or community supervision sentence
is disqualified from sitting on a jury. Under our ruling, then, a conviction rendered by a jury
which includes someone who had successfully completed his probated or community supervision
sentence would not necessarily be void. Moreover, we held that no error would have occurred
at all. Therefore, by virtue of article 44.46(1), Hoffman's conviction could not be reversed by
this court because he failed to raise his complaint to the trial court before the verdict was entered. 
Hoffman's first point is overruled.
III. Whether the Evidence is Factually Sufficient to
 Support his Conviction

          In his second point of error, Hoffman contends the evidence is factually insufficient to
support his conviction.


 He notes that his indictment alleges that the offense occurred in Somervell
County "on or about May 15, 1992." During the punishment hearing, the victim's mother testified
that during the first three quarters of 1992 the victim lived at a home in Utah for troubled boys
called the Majestic Ranch. Consequently, asserts Hoffman, the evidence is factually insufficient
to support his conviction. No effort was made by Hoffman to withdraw his plea as a result of this
testimony.
          A defendant's judicial confession is adequate to find the evidence legally sufficient to
support his conviction. Johnson v. State, 722 S.W.2d 417, 422 (Tex. Crim. App. 1986) (on
rehearing), overruled in part on other grounds, McKenna v. State, 780 S.W.2d 797 (Tex. Crim.
App. 1989); see Tex. Code Crim. Proc. Ann. art 1.15 (Vernon Supp. 1996). Moreover, a
defendant's judicial admission of guilt will waive any complaint against the legal sufficiency of
the evidence. McGlothlin v. State, 896 S.W.2d 183, 186 (Tex. Crim. App. 1995); DeGarmo v.
State, 691 S.W.2d 657, 661 (Tex. Crim. App. 1985); Lasker v. State, 573 S.W.2d 539, 543 (Tex.
Crim. App. [Panel Op.] 1978); Boothe v. State, 474 S.W.2d 219, 221 (Tex. Crim. App. 1972). 
DeGarmo and its progeny directly address cases where the defendant did not testify at the guilt-innocence stage of the trial and then, after a guilty verdict was rendered, admitted guilt of the
crime at the punishment stage. DeGarmo, however, has been further found to apply to cases
where the defendant admits guilt during the guilt-innocence stage, and we hold the doctrine applies
to cases like the one before us where the defendant's trial was not bifurcated because he wished
to enter an open plea of guilt. McWhorter v. State, 911 S.W.2d 538, 540 (Tex. App.—Beaumont
1995, no pet.).
          There is also no reason to find that the DeGarmo waiver doctrine does not apply to a
factual sufficiency complaint. Therefore, we conclude that Hoffman, by judicially admitting his
guilt, waived any complaint against the factual sufficiency of the evidence to support his
conviction. Nevertheless, despite his waiver, we will examine the evidence adduced at trial to
determine if it supports the charges against him.
          Hoffman contends the evidence is factually insufficient to support his conviction because
his indictment alleged the offenses all occurred on May 15, 1992, but that the victim's mother
testified that the victim was in Utah at this time. The State, however, was not required to prove
that the offenses actually occurred on the alleged date; it only was required to prove that the
offenses occurred within the applicable limitations period. Lemell v. State, 915 S.W.2d 486, 489
(Tex. Crim. App. 1995). The State is not bound by the date alleged in the indictment so long as
the date proved is a date prior to the presentment of the indictment and the crime's occurrence is
not so remote as to be barred by limitation. Scoggan v. State, 799 S.W.2d 679, 680 n.3 (Tex.
Crim. App. 1990); see Mireles v. State, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995). The
limitations period for both aggravated sexual assault and indecency with a child is ten years. Tex.
Code Crim. Proc. Ann. art. 12.01(2)(D), 12.03(d) (Vernon Supp. 1996).
          At the commencement of the trial, Hoffman freely and voluntarily admitted that he
committed the offenses "on or about May 15, 1992." The only witness the State called to provide
evidence in support of Hoffman's plea was the victim's mother. Her testimony, however, was the
only evidence adduced at trial to indicate that the offenses did not occur on the date alleged.
          After the mother's testimony, the defense began to present its punishment case first by
calling Hoffman to the stand. On direct, Hoffman admitted committing the alleged offenses in the
spring of 1992, although he further stated that he believed they occurred prior to May 15. On
cross-examination the State asked Hoffman to admit again to the allegations in the indictment,
including the alleged date of the offense, which he did. Later in the trial, the State also admitted
into evidence the written confession Hoffman gave to law enforcement officials upon his arrest. 
In the confession, Hoffman wrote that he committed the offenses "in March or April 1992."
          In our review of the evidence, we should also consider the strength of the mother's
testimony that her son was not living at home during the spring of 1992. Later in her testimony,
when asked about the dates of the events that occurred, the mother admitted that she was having
trouble remembering them because she was feeling "a little bit rattled" and that this was a "very
emotional time" for her.
          After considering all the evidence, both favorable to the verdict and unfavorable, we
conclude that the jury's implicit finding that Hoffman committed the alleged offenses on or about
May 15, 1992, is not so against the great weight and preponderance of the evidence as to be wrong
and unjust. Clewis v. State, No. 450-94, slip op. at 7 (Tex. Crim. App. January 31, 1996).
          As a subpoint, Hoffman asserts that the trial court erred when it failed to withdraw his
guilty plea when the victim's mother testified that her son was in Utah during the first three
quarters of 1992. We disagree with his contention.
          When evidence is introduced before a jury that makes evident the innocence of the accused
or which reasonably and fairly raises an issue of his innocence and such evidence is not
withdrawn, the trial court is required sua sponte to withdraw the accused's plea and enter a not
guilty plea for him. Varela v. State, 553 S.W.2d 111, 112 (Tex. Crim. App. 1977). This is true
even though no effort is made by the defendant at any time during the trial to withdraw the plea
and even though the testimony of the defendant, himself, may show him to be guilty of the
offense. Montalvo v. State, 572 S.W.2d 714, 715-16 (Tex. Crim. App. [Panel Op.] 1978). The
evidence, however, must do more than just present a defensive issue; it must reasonably and fairly
present such issue before the trial court is required to withdraw the plea. Varela, 553 S.W.2d at
112. In determining whether the evidence reasonably and fairly raises the issue, a totality of the
circumstances test is employed. Griffin v. State, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986)
(plurality).
          The cases which Hoffman cites for the proposition that the trial court was required to
withdraw his guilty plea involved instances where the defendant was denying certain elements of
the charge to which he had previously plead guilty. Montalvo, 572 S.W.2d at 716; Woodberry
v. State, 547 S.W.2d 629, 630-31 (Tex. Crim. App. 1977). The testimony of the victim's mother
did not rise to the level of calling into question the facts in support of Hoffman's guilty plea. In
other words, her testimony did not reasonably and fairly present to the trial court an issue
questioning Hoffman's guilt. His argument is without merit. Hoffman's second point is
overruled.
IV. Whether the Trial Court Erred in Overruling Hoffman's Challenge for
 Cause Against Venireman Bussey

          In his third point of error Hoffman contends the trial court erred in overruling his challenge
for cause against venireman Morris Bussey.
          In analyzing a trial court's denial of a challenge for cause we must examine the record as
a whole to determine whether there is support for the trial court's decision. Satterwhite v. State,
858 S.W.2d 412, 415 (Tex. Crim. App. 1993). Great deference is afforded the trial court's
actions, especially with vacillating or equivocating veniremen. Id. The trial court's decision will
be disturbed only upon an abuse of discretion. Id.
          During voir dire Bussey, in response to a question propounded by the State to the entire
venire panel, stated that he could not consider the entire range of punishment, probation in
particular, for the offenses with which Hoffman was charged. He later indicated that he had
strong feelings about the case due to the nature of the offenses, the fact that he also had children,
and the fact that Hoffman was going to plead guilty.
          Upon further questioning from the State, Bussey stated that he could listen to mitigating
evidence from a psychologist who might testify on Hoffman's behalf and that he would keep an
open mind. Bussey continued to vacillate as he stated that, because of his affection for his family,
it would be difficult to set aside his emotions in judging the case. Quickly thereafter, however,
Bussey said he could set aside those feelings.
          Bussey was then called before the bench and asked if he had previously stated that he could
not consider the full range of punishment. He responded that he could, but he also commented
that because the defendant was going to plead guilty to the charges and because he had children
of his own then he would want to give the maximum punishment. The defense then asked if
Bussey could give "fair consideration" to the whole range, whereupon Bussey answered that he
could. Upon further questioning from the defense, the State, and the court, Bussey stated that he
believed a person convicted of a sexual offense against a child should get the maximum
punishment but that he would consider all the evidence presented.
          When asked again by the State if he could weigh all the evidence and then consider the full
range of punishment, Bussey responded that "it would be 50/50." The State then informed Bussey
that he would be required by law to wait until after being presented all the evidence to consider
an appropriate punishment range. Bussey responded that he could do that.
          Hoffman challenged Bussey for cause on the ground that he could not consider the full
range of punishment. See Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (Vernon Supp. 1996).
          In reviewing the evidence in the record, we find that Bussey was a vacillating venireman
who ultimately answered that he could consider all the evidence and the full range of punishment. 
We cannot conclude that the trial court abused its discretion in denying Hoffman's challenge for
cause against him. Hoffman's third point is overruled.
V. Whether the Trial Court Erred in Overruling Hoffman's Challenge for
 Cause Against Venireman Merrill

          In his fourth point of error Hoffman contends the trial court erred in overruling his
challenge for cause against venireman Joel Samuel Merrill.
          In response to questioning from the defense, Merrill answered that he could not consider
giving Hoffman a probated sentence. He stated that Hoffman had already plead guilty and,
therefore, he could not give probation. He further commented that he is irritated by convicted
defendants who receive jail sentences and then are released soon afterwards on parole. Merrill
stated that he did not know whether Hoffman would be reformed by probation, but he was
doubtful whether probation ever works. In response to more questioning from the defense, Merrill
stated that he would not want someone like himself on his jury if he were charged with these same
offenses.
          The State then began to question Merrill about his attitude toward the punishment Hoffman
should receive. Merrill responded that he would be as open-minded as anyone else and that his
grievance was really with the entire criminal justice system, not with Hoffman. Nevertheless, he
also stated that he could not go along with the minimum punishment.
          The State then informed Merrill that to sit on the jury he would be required to consider the
full range of punishment. The State asked Merrill if he would be able to keep an open mind. 
Merrill responded that he probably could but that "if the evidence presents itself, [he] would throw
the book at [Hoffman]." Merrill agreed, however, that it would depend on the evidence. In
response to a particular question from the State, Merrill answered that he probably could consider
the minimum probated sentence on all the counts.
          Hoffman challenged Merrill, like Bussey, for cause on the ground that he could not
consider the full range of punishment. See Tex. Code Crim. Proc. Ann. art. 35.16(c)(2). 
Merrill, like Bussey, vacillated in his statements but ultimately stated that he would consider all
the evidence and the full range of punishment. The trial court did not abuse its discretion in
denying Hoffman's challenge against Merrill. His fourth point is overruled.
VI. Whether Erred Occurred at Closing Argument
          In his fifth and final point, Hoffman attacks the following portion of the State's closing
argument:
How long will you tolerate that boy having to live with his manhood being stolen by a
person who did not know whether he was a homosexual or a heterosexual and hadn't for
years? How long will society -- will this -- can this be tolerated?
 
. . .
 
You have got a tool to send a message from this courtroom today to other people who do
not know their sexual orientation who may be out here with kids. You can send the
message today [that] it will not be tolerated for one minute.

Hoffman contends that the State in its argument was attempting to prejudice the jury against him
by criticizing homosexuals as a group, even though the State did not actually refer to homosexuals
but to people unable to determine their sexual preference.
          There are four permissible areas of jury argument: (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) answers to arguments from the defense; and (4) pleas
for law enforcement. Willis v. State, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989), cert. denied,
498 U.S. 908, 111 S.Ct. 279 (1990).
          John Todd, a clinical psychologist who had been treating Hoffman for his deviate sexual
tendencies since the time soon after Hoffman's arrest, testified that Hoffman had been having
problems with his sexual preference, "deciding whether he wished to be more towards a
homosexual lifestyle or heterosexual lifestyle." The State's reference to Hoffman not knowing his
sexual preference was, therefore, a permissible summation of the evidence.
          With regard to Hoffman's complaint that the State's argument was manifestly improper
because it attempted to prejudice the jury against Hoffman by, essentially, calling him a
homosexual, homosexual conduct is illegal in this state. Tex. Penal Code Ann. § 21.06 (Vernon
1994). Regardless, the State's argument, contrary to Hoffman's assertions, was directed more
towards homosexuals who are attracted to and sexually abuse young boys. The following is also
a portion of the State's closing argument:
[H]ow much discipline does it take not to pull down the pants of an 11-year-old boy? 
What kind of an unnatural sexual attraction was going on out there? What kind of a person
is sexually attracted to an 11-year-old boy? And what kind of a person leads this lady to
believe other boys were going to be there and then they're not? What kind of a person gets
him to spend the night?
 
Can you see in your mind's eye how this was thought out ahead of time? If you use your
common sense, do you honestly think this was the first sexual attraction that he had for this
boy this particular evening, or do you think it was probably leading up to that before, if
you use your common sense? And what did Steve Hoffman do to stop this unnatural,
perverted, sexual attraction? Nothing. What did he do after it occurred? Nothing. . . .
When did he do something? When he got caught. When did he get counseling? When he
got caught.
 
And so the question is: How much child abuse will you tolerate? How long will you
tolerate 11-year-old boys being molested? How long will you tolerate 11-year-old boys[']
lives being ruined?

The above-quoted portion of the State's final argument reveals that the State was attacking
homosexuals who prey upon young boys. The evidence in the record supported the State's
argument that Hoffman planned out his crime and exploited the naivete and innocence of the
victim. We conclude that the State's argument in this vein was also a proper summation of the
evidence. Hoffman's arguments are without merit.
          Moreover, Hoffman failed to object to the State's argument. He nevertheless asserts the
error was fundamental. Having concluded, above, that there was no error at all, we find there was
no fundamental error. Therefore, Hoffman failed to preserve his complaint for review. Tex. R.
App. P. 52(a). His fifth point is overruled. The judgment is affirmed.


                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings and
         Justice Vance
Affirmed
Opinion delivered and filed May 15, 1996
Publish