**Clinton NEVELS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–97–002–CR.

Court of Appeals of Texas,
Waco.

Oct. 1, 1997.

**156**

Kathryn J. Gilliam, Waco, for appellant.

John W. Segrest, Criminal District Attorney, Laura M. Alaniz, Asst. Criminal District Attorney, Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

The appellant, Clinton Nevels, appeals his convictions for attempted aggravated sexual assault and aggravated sexual assault. *See* TEX. PEN.CODE ANN. § 15.01 (Vernon 1994), § 22.021 (Vernon 1994 & Supp.1997). On appeal, Nevels brings four points of error: (1) the trial court violated his federal and state constitutional rights to confrontation when it refused to allow him to fully cross-

examine one of the victims; (2) the trial court erred in denying Nevels' motion for mistrial after an allegedly improper comment was made by the State during jury argument; (3) the evidence is both legally and factually insufficient to support one of Nevels' convictions for aggravated sexual assault; and (4) the trial court erred in refusing to instruct the jury on the lesser-included offense of sexual assault against one of the victims. We will affirm.

### Factual Background

Nevels was charged by indictment with the felony offenses of attempted aggravated sexual assault and two counts of aggravated sexual assault. *See* TEX. PEN.CODE ANN. §§ 15.01, 22.021. A jury convicted Nevels on all three counts, assessing punishment at 10 years' incarceration, probated for 10 years, and a $10,000 fine for the attempted aggravated sexual assault of A.P.; 10 years' incarceration in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine for the aggravated sexual assault of S.S.; and 35 years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for the aggravated sexual assault of A.A.[1]

Based on the evidence adduced at trial, Nevels attacked the three women in September 1995. Nevels asserted at trial that on all three occasions he had the consent of each victim to make sexual advances toward her. No evidence was presented to indicate that the victims were acquainted with each other.

### Did the Trial Court Err in Limiting the Defendant's Cross–Examination of a Victim?

█ In his first point of error, Nevels complains the trial court erred in prohibiting him from cross-examining A.A., one of the victims, about her employment as a stripper. According to Nevels, the fact that A.A. was employed as a stripper at the time of trial would have tended to establish that A.A. consented to sexual intercourse with Nevels and that she was not the traumatized victim

---

1. We will not use the victims' names in this opinion but instead will refer to each victim by her initials. See *Matamoros v. State*, 901 S.W.2d

470, 479 (Tex.Crim.App.1995) (Baird, J., concurring); see also *Dinkins v. State*, 894 S.W.2d 330, 335 n. 2 (Tex.Crim.App.1995).

the State portrayed her to be. Nevels contends that prohibition violated his federal and state constitutional rights of confrontation. *See* U.S. CONST. amend VI, XIV; TEX. CONST. art. I, § 10.[2]

At the State's request, the trial court refused to allow Nevels to question A.A. about her employment as a stripper, finding that the probative value of such testimony was substantially outweighed by its prejudicial effect, especially in light of the fact that A.A. was not employed as a stripper at the time Nevels sexually assaulted her. *See* TEX. R.CRIM. EVID. 403. Nevels argued to the trial court that such evidence was relevant to show that, despite A.A.'s tearful testimony, she was not as traumatized by the attack as she claimed if she voluntarily took off her clothes in front of strangers as part of her job. Furthermore, Nevels asserts, the fact that A.A. was a stripper was probative of the fact that she consented to sexual intercourse with him. We disagree.

 The trial court has the discretion to impose reasonable restrictions or limits on cross-examination without violating an accused's constitutional right to confront witnesses. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *Carroll v. State*, 916 S.W.2d 494, 498 (Tex.Crim.App.1996). Such restrictions may be based on concerns about harassment, prejudice, confusion of the issues, or the witness' safety. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435; *Carroll*, 916 S.W.2d at 498. These same concerns are mirrored in Rule 403 of the Rules of Criminal Evidence which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

TEX.R.CRIM. EVID. 403. Consequently, if a trial court is permitted to limit the cross-examination of a witness for the same reasons articulated in Rule 403, we conclude that a trial court may exclude evidence from being elicited during cross-examination on the basis that the prejudicial effect of such evidence clearly outweighs its probative value. *See Gonzales v. State*, 929 S.W.2d 546, 551 (Tex.App.—Austin 1996, pet. ref'd); *see also id.*

The trial court found that the probative value of A.A.'s testimony regarding her employment as a stripper was substantially outweighed by its prejudicial effect. Consequently, because the trial court may limit the cross-examination of a witness for such reason without violating a criminal defendant's constitutional right to confrontation of witnesses, we conclude that the trial court did not err in limiting Nevels' cross-examination of A.A. *See Gonzales*, 929 S.W.2d at 551; *see also Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435; *Carroll*, 916 S.W.2d at 498. Nevels' first point is overruled.

## Was the Defendant Harmed by the Trial Court's Refusal to Grant a Mistrial After an Improper Prosecutorial Comment was Made During Jury Argument?

 In his second point of error, Nevels complains the trial court committed reversible error when it refused to grant a mistrial after the State made an improper comment during jury argument. During closing argument the following exchange occurred:

| | |
|---|---|
| [STATE]: | . . . I don't know how he (defense counsel) can look at you with a straight face when he says— |
| [DEFENSE]: | Your Honor— |
| [STATE]: | —that [A.A.]— |
| [DEFENSE]: | —I'm going to object to that, again striking over the shoulders. |

2. Nevels makes no effort to demonstrate that the protections provided by the United States and Texas Constitutions differ in any relevant respect. Consequently, we will assume for the purpose of this opinion that Nevels' rights under the Texas Constitution are comparable to those guaranteed by the United States Constitution. *See Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Crim.App. 1991); *Gonzales v. State*, 929 S.W.2d 546, 548–49 (Tex.App.—Austin 1996, pet. ref'd).

COURT: And I sustain the objection and instruct the jury they'll disregard counsel's last statement for any purpose.

[DEFENSE]: Move for a mistrial, Your Honor.

COURT: Overruled.

Nevels argues that the State's comment about his attorney's being unable to look at the jury with a "straight face" as he made his closing argument struck at him over the shoulders of his defense counsel and that his convictions should be reversed due to the trial court's refusal to grant a mistrial based on the impropriety of the State's actions. The State maintains that, because the trial court sustained Nevels' objection and instructed the jury to disregard the comment, no error occurred. We agree with the State that no harmful error resulted but conclude that when an improper jury argument strikes at the accused over the shoulders of his defense counsel a curative instruction cannot cure the harm and a harm analysis under Rule 81(b)(2) of the Rules of Appellate Procedure is required. *See* Tex.R.App. P. 81(b)(2), 49 Tex. B.J. 581 (Tex.Crim.App. 1986, repealed 1997).

■■ Permissible jury argument is limited to four areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to opposing counsel's argument, and (4) pleas for law enforcement. *Lagrone v. State,* 942 S.W.2d 602, 620 (Tex. Crim.App.1997); *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.1995); *Hoffman v. State,* 922 S.W.2d 663, 675 (Tex. App.—Waco 1996, pet. ref'd). When a jury argument falls outside these areas, error occurs. *See, e.g., Lagrone,* 942 S.W.2d at 619; *Dinkins,* 894 S.W.2d at 357. However, an instruction to disregard the argument generally cures the harm. *See Dinkins,* 894 S.W.2d at 357; *Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Crim.App.1993).

Despite this general rule, the Court of Criminal Appeals seems to have adopted two different tests for determining whether the accused was harmed by an improper jury argument. The distinction appears to hinge on whether the improper argument struck at the accused over the shoulders of defense counsel. *See Lagrone,* 942 S.W.2d at 618–20; *Dinkins,* 894 S.W.2d at 357; *Coble v. State,* 871 S.W.2d 192, 204–05 (Tex.Crim.App.1993); *Cooks,* 844 S.W.2d at 727–28; *Orona v. State,* 791 S.W.2d 125, 128–30 (Tex.Crim.App.1990); *McGee v. State,* 774 S.W.2d 229, 237–39 (Tex. Crim.App.1989). Ordinarily, when a trial court sustains an objection to an improper jury argument and admonishes the jury to disregard the inappropriate comment, a presumption exists that the curative instruction eliminated any harm that resulted from the improper argument unless the comment was *so inflammatory that its prejudicial effect could not reasonably be removed.* *See Cooks,* 844 S.W.2d at 727; *see also Dinkins,* 894 S.W.2d at 357; *Jones v. State,* 568 S.W.2d 847, 860 (Tex.Crim.App.1978). However, when the improper jury argument strikes at the accused over defense counsel's shoulders, the presumption that an instruction by the trial court to disregard the comment obviates the harm is overridden by the presumption that an improper jury argument which strikes at the accused over defense counsel's shoulders is so egregious that a curative instruction has no impact on the error. *See Dinkins,* 894 S.W.2d at 357; *Orona,* 791 S.W.2d at 130. As a consequence, a harm analysis must be conducted to determine if the error contributed to the outcome of the defendant's trial. *See id.; see also* Tex.R.App. P. 81(b)(2) (repealed).[3]

■ In the present case, the prosecutor's comment that she did not know how Nevels' defense counsel could sincerely make his closing argument did not fall within one of the four permissible areas of jury argument. Consequently, we must determine whether the trial court's overruling of Nevels' motion for a mistrial after the court sustained his objection to the comment resulted in error requiring reversal. Tex.

---

**3.** We are aware that the Court of Criminal Appeals adopted a new harm analysis effective September 1, 1997. *See* Tex.R.App. P. 44.2(a). However, the application of the new rule would not be feasible in this particular proceeding. *See* Order of Final Approval of Revisions to the Texas Rules of Appellate Procedure (1997).

R.App. P. 81(b)(2) (repealed); *Lagrone,* 942 S.W.2d at 620; *Orona,* 791 S.W.2d at 129–30; *Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989); *Bryant v. State,* 923 S.W.2d 199, 211 (Tex.App.—Waco 1996, pet. ref'd).

▮▮▮▮ To determine whether any harm resulted from the alleged error of the trial court's denial of Nevels' motion for mistrial, we "must calculate the probable impact of the error on the jury in light of the existence of the other evidence" and weigh the evidence presented in support of Nevels' guilt with the State's improper comment. *See La-grone,* 942 S.W.2d at 620; *see also Orona,* 791 S.W.2d at 130; *Harris,* 790 S.W.2d at 587. In making that determination, we will consider the following six factors: (1) the source of the error, (2) the nature of the error, (3) whether or to what extent the error was emphasized by the State, (4) the probable collateral implications of the error, (5) how much weight a juror would probably place on the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona,* 791 S.W.2d at 130; *Harris,* 790 S.W.2d at 587; *see also Lagrone,* 942 S.W.2d at 620; *Bryant,* 923 S.W.2d at 212.

We begin our analysis by observing that the comment was made by the State during its rebuttal at the guilt-innocence phase of Nevels' trial. Nevels' defense counsel quickly objected, not even allowing the prosecutor to finish the sentence containing the improper comment. The error, therefore, was minimal. Moreover, when we calculate the probable impact of the error on the jury in light of the evidence presented in support of Nevels' guilt, we conclude that such evidence negates the impact, if any, the improper comment had on the jury. *See Lagrone,* 942 S.W.2d at 620; *see also Orona,* 791 S.W.2d at 130; *Harris,* 790 S.W.2d at 587. Not only

did the victim of the particular sexual assault referenced in the improper prosecutorial comment testify at trial, identifying Nevels as her attacker and recounting the violent attack, the State also introduced into evidence pictures of A.A.'s bruised face and body. Additionally, the State introduced into evidence the results of A.A.'s forensic examination which also showed A.A.'s bruised body and indicated that A.A. had sustained a "slight abrasion at [the] entrance to [her] vagina."

In light of the "other evidence" presented at trial, we conclude that the trial court's failure to grant Nevels' motion for mistrial, after an improper comment made during the State's closing argument, did not result in any harm to Nevels. *See* Tex.R.App. P. 82(b)(2) (repealed); *Lagrone,* 942 S.W.2d at 620; *see also Orona,* 791 S.W.2d at 130; *Harris,* 790 S.W.2d at 587. Nevels' second point is overruled.

## Was the Evidence Legally and Factually Sufficient to Support the Jury's Verdict?

▮▮▮▮ In his third point of error, Nevels argues that the evidence is both legally and factually insufficient to support his conviction for the aggravated sexual assault of S.S.[4] Nevels contends that there is insufficient evidence to support the jury's finding that he threatened to use force or violence against S.S. when he sexually assaulted her.

▮▮▮ When we review a challenge to the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

4. We recognized that appellate courts should conduct a factual sufficiency review of the evidence when such point is raised on appeal. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). However, Nevels combines his complaints of both the legal and the factual insufficiency of the evidence in point three of his brief and limits his prayer for relief to a request for reversal and acquittal of his conviction for the aggravated sexual assault of S.S. We will address both of Nevels' complaints, *see Meador v. State,*

941 S.W.2d 156, 158 (Tex.App.—Corpus Christi 1996, pet. ref'd), but caution appellate counsel to brief separately any complaints regarding the legal and factual sufficiency of the evidence. *See McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim. App.1997) (merely stating the appropriate standard of review for determining the factual sufficiency of the evidence constitutes inadequate briefing and presents nothing for appellate review).

(1979); *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App.1995); *Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Crim.App.1991); *Hernandez v. State,* 938 S.W.2d 503, 513 (Tex. App.—Waco 1997, pet. ref'd). In conducting such a review, we must remember that the jury is the sole fact finder and is charged with the duty of judging the credibility of the witnesses, reconciling conflicts in testimony, and accepting or rejecting any or all of the evidence on either side. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991). If some evidence establishes the accused's guilt beyond a reasonable doubt, then we may not reverse the judgment on legal insufficiency grounds. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

In conducting a factual-sufficiency review, we must view all the evidence, presented by both the State and the defendant, and reverse only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Furthermore, we give great deference to the jury's finding, realizing that we are reviewing the facts from a lifeless record. *See Jones v. State,* 944 S.W.2d 642, 648 (Tex.Crim.App. 1996); *Clewis,* 922 S.W.2d at 133; *Hernandez,* 938 S.W.2d at 512; *Mata v. State,* 939 S.W.2d 719, 725 (Tex.App.—Waco 1997, no pet.).

It is undisputed that Nevels encountered S.S. as she was walking across Interstate 35 on the Forrest Street Bridge in Waco. According to S.S., she was walking home after visiting some friends when a man in a red car called her by name. S.S. did not know the man, but when he said he knew some of her relatives she accepted a ride from him. Instead of driving to S.S.'s house, Nevels drove in the opposite direction, saying that he had to stop by his own house. Nevels drove to a wooded area where he stopped the car. S.S. testified that Nevels ordered her to take off her clothes, telling her that if she refused to comply he would hit her with the rock she had in her hand.[5] Nevels then forcibly removed the rock from her hand. S.S. stated

that she was afraid of Nevels and that she feared if she did not comply with his demands he would "get violent" and she would "end up back there dead under some of the trees." After the attack, S.S. stated that Nevels seemed "deranged" and that she was able to convince him to drive to a motel under the pretense of getting crack cocaine from some of her friends. At the motel, S.S. told the clerk that she had been sexually assaulted and gave the clerk the license plate number.

Nevels' version of the events that transpired after he picked up S.S. varies from S.S.'s version. According to Nevels, he had known S.S. for several years and that on at least three different occasions S.S. had performed oral sex on him in exchange for crack cocaine. The night he encountered S.S., Nevels stated he believed that he and S.S. were "going to get high" together. Nevels testified that S.S. initiated the sexual contact between the two when she started "playing with [him] while [he] was going down the interstate." Nevels then drove to an isolated area where they smoked crack cocaine and had "regular" sex. Nevels does not dispute that, after having sex with S.S., she suggested they drive to a motel to get more cocaine. However, he testified that upon arrival, S.S. said that her friends' car was not there and that she got out to ask the motel clerk if her friends were still registered at the motel. S.S. then returned to the car to tell Nevels that her friends were still registered at the motel and that she was going to wait for them. Telling S.S. that he did not want to wait, Nevels drove away.

When we review the evidence adduced at trial in the light most favorable to the prosecution, we conclude that there is legally sufficient evidence to support the verdict that S.S. was placed in fear of death or serious bodily injury by the words or acts of Nevels. S.S. testified that she feared Nevels would hurt or even kill her if she did not comply with his demands and submit to his sexual attack. Such evidence is legally sufficient to support Nevels' conviction of the aggravated

5. The record indicates that prior to encountering Nevels, S.S. picked up a rock as she was walking home. S.S. testified that it was common for her to pick up things such as rocks and take them home with her.

sexual assault of S.S. *See Selvog v. State,* 895 S.W.2d 879, 882 (Tex.App.—Texarkana 1995, pet. ref'd). Considering all the evidence in the record, there is also factually sufficient evidence to support Nevels' conviction of the aggravated sexual assault of S.S. Even though Nevels disputes that he had sexual intercourse with S.S. without her consent, giving the appropriate deference to the jury, we cannot say that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Jones,* 944 S.W.2d at 648; *Clewis,* 922 S.W.2d at 133; *Hernandez,* 938 S.W.2d at 512; *Mata,* 939 S.W.2d at 725. Therefore, we hold there is both legally and factually sufficient evidence to support Nevels' conviction of the aggravated sexual assault of S.S. and overrule Nevels' third point of error.

## Did the Trial Court Err in Refusing to Instruct the Jury on a Lesser– Included Offense?

In his fourth point, Nevels contends the trial court erred in refusing to include an instruction on the lesser-included offense of sexual assault and only charging the jury on aggravated sexual assault in regard to S.S. Nevels argues there was sufficient evidence presented to allow the jury to find that he was guilty only of sexual assault and not of the aggravated offense because a dispute existed as to whether Nevels' acts or words placed S.S. in fear of death or serious bodily injury.

An offense is "lesser-included" of the offense charged in an indictment if: (1) it is established by proof of the same, or less than all, facts required to establish the greater offense; (2) it differs from the greater offense only in the respect that proof of a less serious injury or risk of injury is sufficient to establish it; (3) it differs from the greater offense only in the respect that proof of a less culpable mental state is sufficient to establish it; or (4) it consists of an attempt to commit the greater offense. TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981); *Arevalo v. State,* 943 S.W.2d 887, 888–89 (Tex.Crim. App.1997); *Easter v. State,* 867 S.W.2d 929, 940 (Tex.App.—Waco 1993, pet. ref'd).

In determining whether a jury must be instructed concerning a lesser-included offense, a two-step analysis must be applied. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993); *Easter,* 867 S.W.2d at 940. First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Rousseau,* 855 S.W.2d at 672; *Easter,* 867 S.W.2d at 940. Second, there must be some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty of only the lesser offense. *Arevalo,* 943 S.W.2d at 889; *Rousseau,* 855 S.W.2d at 673; *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App. [Panel Op.] 1981) (on rehearing); *Easter,* 867 S.W.2d at 940. Furthermore, the Court of Criminal Appeals has expressly stated that:

> It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted.

*Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Crim.App.1997) (citing *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App.1994)).

The State does not dispute that sexual assault is a lesser-included offense of aggravated sexual assault. *See Ramos v. State,* 865 S.W.2d 463, 465 (Tex.Crim.App.1993); *see also* TEX. PEN.CODE ANN. §§ 22.011, 22.021 (Vernon 1994 & Supp.1997). We therefore turn to the second prong of the test for determining whether a charge on a lesser-included offense should have been given: Was there sufficient evidence in the record to allow the jury to rationally find Nevels guilty of only the sexual assault of S.S.? As set out above, both the victim, S.S., and Nevels testified as to the events which occurred on September 6, 1995, the day Nevels attacked S.S. According to S.S., she felt compelled to comply with Nevels' demands because she feared for her life. Nevels contends that the sexual contact between he and S.S. was consensual.

Having reviewed the record, we cannot conclude that any evidence was presented at trial to allow the jury to rationally find Nev-

els guilty of only sexual assault as opposed to aggravated sexual assault. The aggravating element of the offense with which Nevels is charged is whether he, by acts or words, placed S.S. in fear of death or serious bodily injury. *See* TEX. PEN.CODE ANN. §§ 22.021(a)(1)(A)(i), 22.021(a)(2)(A)(ii) (Vernon Supp.1997). To be entitled to a charge on the lesser-included offense of sexual assault, there would have to be evidence presented that Nevels did not place S.S. in fear of death or serious bodily injury during the attack. Nevels' own testimony that he and S.S. engaged in consensual sexual intercourse is the only evidence in the record that might have allowed the jury to have found Nevels guilty of only sexual assault. To have included an instruction to the jury on the lesser-included offense of sexual assault would have undermined the rationale behind the second prong of the test for determining whether a defendant is entitled to such instruction and "would constitute an invitation to the jury to return a compromise or otherwise unwarranted verdict." *Arevalo,* 943 S.W.2d at 889 (citing MODEL PENAL CODE § 1.07(5) (1985)). Consequently, we conclude that Nevels was not entitled to a jury instruction on the lesser-included offense of sexual assault and overrule his fourth point of error.

The judgment is affirmed.