NUMBER
13-01-196-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                      CORPUS
 CHRISTI - EDINBURG


 

 

VOLKSWAGEN OF
AMERICA, INC.                                          Appellant,

 

                                                   v.

 

ANDREW RAMIREZ, SR.                                                         Appellee.

 

 

      On
appeal from the 93rd  District
 Court of Hidalgo County,
 Texas.

 

 

                                      OPINION

 

       Before
Chief Justice Valdez and Justices Hinojosa and Rodriguez

                              Opinion
by Chief Justice Valdez

 

 








This is a product
liability case.  A Volkswagen Passat driven by Haley Sperling
crossed the median of U.S. Highway 83 and collided with a vehicle driven by
Diana Alice Ramirez-Garza and occupied by her fourteen year old daughter,
Jacquelyn Renee Guerra.  Diana Alice
Ramirez-Garza was killed in the collision and her daughter suffered severe
injuries.  Andrew Ramirez, Sr., Ester
Ramirez, and Andrew Ramirez, Jr., as next friend of Jacquelyn Renee Guerra and
as administrator of the estate of Diana Alice Ramirez-Garza, sued Volkswagen of
America, Inc., alleging that the accident was caused by a defective wheel
assembly on Sperling=s Passat. 


The initial trial of
this matter ended with a jury verdict in favor of Volkswagen; however, the
trial court granted appellees a new trial Ain the interest of justice.@  Upon retrial, the jury found
that the Volkswagen Passat involved in the collision
was defective and Volkswagen=s negligence proximately caused the automobile accident resulting in appellees= injuries. The trial court entered judgment on the verdict, awarding appellees $17,237,664.38. 
Volkswagen appeals this judgment by seven issues.  We affirm.    


                                               Qualification
of Juror        








In its first issue, Volkswagen
contends that the jury=s verdict cannot support the judgment because one of the ten jurors
was disqualified from serving on the jury. 
Almost thirty years before the trial of the instant case, the juror had
pleaded guilty to a felony, successfully completed probation, and obtained a
dismissal of the charges against him.  In
the instant case, this juror failed to indicate on his questionnaire that he
had been an accused in a felony criminal case. 
Volkswagen discovered the juror=s  conviction after trial and
made it one basis for its motion for new trial. 
Volkswagen argues that the juror was unqualified to serve on the
jury.  Volkswagen further argues that the
statute authorizing dismissal of the charges against the juror is
unconstitutional because it effectively Aauthorizes Texas courts to grant pardons@ despite the fact that the Texas Constitution reserves that right to
the Governor.  

The trial court=s ruling on a motion for new trial will not be disturbed on appeal in the
absence of an abuse of discretion.  Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984).  It is an abuse of discretion for a trial
court to rule arbitrarily, unreasonably, or without regard to guiding legal
principles, or to rule without supporting evidence.  Bocquet
v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).

Under the government
code, a prospective juror must not have been convicted of a felony.  See Tex.
Gov=t Code Ann.' 62.102(7) (Vernon 1998).  However, in the instant
case, the juror in question had received a probation order providing that:

his plea of guilty in this cause is hereby ordered withdrawn, and the
indictment is ordered dismissed.  It is
the further order of this Court that the defendant . . . is hereby discharged
from the terms, penalties, and disabilities of the said offense for which he
was convicted in this cause and from the Probation which was heretofore granted
him, and that the defendant be in all things discharged and released from the
jurisdiction of this court for the offense for which he was convicted in this
cause.

 








This order was entered under the authority of
article 42.12, section 20, of the code of criminal procedure, under which a
court may set aside a guilty verdict or permit the defendant to withdraw his plea
of guilt, and thereafter Ashall dismiss the accusation, complaint, information or indictment
against the defendant, who shall thereafter be released from all penalties and
disabilities resulting from the offense or crime of which he has been convicted
or to which he had pleaded guilty.@  Tex. Code Crim. Proc. Ann. 
42.12, ' 20 (Vernon Supp. 2002).[1]








In 1996, the Waco court of
appeals observed that, A[u]ntil recently,@ Texas courts had Aunanimously@ held that article 42.12, section 20, operated to restore to a
convicted felon his ability to sit on a jury once he successfully completed the
terms of his probation.  Hoffman v.
State, 922 S.W.2d 663, 668 (Tex. App.BWaco 1996, pet. ref=d)(citing Walker v. State, 645 S.W.2d 294, 295 (Tex. Crim. App. 1983); Payton v. State, 572 S.W.2d 677,
678-79 (Tex. Crim. App. 1978)(on reh=g), overruled on other grounds, Jones v. State, 982
S.W.2d 386 (Tex. Crim. App. 1998); Smith v. State,
859 S.W.2d 463, 464 (Tex. App.BFort Worth 1993, pet. ref=d); Day v. State, 784 S.W.2d 955, 956 (Tex. AppBFort Worth 1990, no pet.)).  The
Waco court recognized, but refused to follow, R.R.E. v. Glenn, 884
S.W.2d 189 (Tex. App.BFort Worth 1994, writ denied), which held that article 42.12, section 20,
unconstitutionally infringed upon the executive branch=s exclusive authority to restore a convicted felon=s civil rights.  Hoffman,
922 S.W.2d at 668; R.R.E., 884 S.W.2d at 192-93; see also Dempsey v.
Beaumont Hosp., Inc., 38 S.W.3d 287, 289-90 (Tex. App.BBeaumont 2001, pet. dism=d by agr.)(citing Glenn in holding
that convicted felon was constitutionally disqualified from jury service).[2]

As an initial matter,
we conclude that Volkswagen=s argument that article 42.12, section 20 is unconstitutional lacks
merit.  Article IV, section 11(b) of the
Texas Constitution grants the exclusive power to grant a pardon to the
executive branch of the government; however, the district courts of Texas have the
constitutional and statutory authority to dismiss charges against a defendant
from the moment of indictment until the time the defendant completes the terms
of his probation.  Hoffman, 922
S.W.2d at 668.  This authority differs
from the constitutional authority of the executive branch to pardon a criminal
defendant after conviction.  See id.  Article 42.12, section 20 does not grant the
judiciary and legislature greater authority than allowed by the Texas
Constitution.  Id.; see
Ex parte Giles, 502 S.W.2d 774, 785 (Tex. Crim. App. 1973) (earlier version of art. 42.12, ' 20 enacted pursuant to Tex.
Const. art IV, ' 11A); Baker v. State, 70 Tex. Crim. 618, 158 S.W. 998, 1003 (1913) (affirming
constitutionality of earlier version of art. 42.12, ' 20).  We conclude that article
42.12, section 20 does not violate the Texas Constitution as an infringement on
the executive right to grant a pardon. 
We refuse to follow Glenn or Dempsey to the extent that
these cases may hold otherwise.








Having concluded that article 42.12 of the Texas Code of Criminal
Procedure is constitutional, we next determine whether a dismissal under this
provision operates to allow an individual with a prior felony conviction to
serve on a jury.  Both the Texas Supreme
Court and the Texas Court of Criminal Appeals have recently considered the
extent to which a dismissal under article 42.12 can relieve the penalties and
disabilities associated with a felony conviction.  

The Texas Supreme Court addressed the effect of article 42.12, section
20 with regard to the right of a convicted felon to carry a concealed
handgun.  See Tune v. Tex. Dep=t of Pub. Safety, 23 S.W.3d 358 (Tex. 2000).  In Tune, although Tune=s prior felony
conviction had been dismissed under article 42.12, the court nevertheless
concluded that this conviction prevented Tune from obtaining a permit to carry
a concealed handgun.  Id. at 363-64.  In reaching this conclusion, the court noted
that the Concealed Handgun Act (the AAct@) provided an explicit
definition of the term Aconvicted.@  Under the Act, a person is Aconvicted@ after an adjudication
of guilt is entered against him whether or not his sentence is subsequently
probated and he is discharged from community supervision.  Id. at 363.  Tune had been Aconvicted@ according to this
definition.  The court thus stated that:

If the Handgun Act didn=t include a specific
definition of the term Aconvicted,@ then the inability to
obtain a concealed-handgun license might be one of the penalties and
disabilities removed when the district court dismissed Tune=s indictment.  But the Act does include a specific
definition.  And, for obvious reasons,
the Legislature may wish to keep concealed handguns out of the hands of persons
who have been convicted of a felony, even if those persons satisfactorily
complete community supervision.








Id. at 364 (footnote
omitted).  In reaching its conclusion,
the Texas Supreme Court reasoned that the Legislature could expressly provide
in article 42.12 that any general penalties and disabilities resulting from a
conviction are lifted when a person is discharged from community supervision
and the indictment is dismissed, and yet retain certain specific restrictions
on those who have previously been convicted of felonies.  Id. In the instant case,
we note that the government code contains no such restrictive language
governing the meaning of a Aconviction@ for the purposes of
jury service.  See Tex. Gov=t
Code Ann.
' 62.102(7) (Vernon 1998). 

Recently, the Texas Court of Criminal Appeals held that a felony
conviction set aside under article 42.12 is not a felony conviction for
purposes of enhancement under section 46.04(a) of the Texas Penal Code, making
it an offense for a convicted felon to possess a firearm.  See Cuellar v. State, No. 0733-01,
2002 Tex. Crim. App. LEXIS 31,
at *14 (February 13, 2002).  According to Cuellar, Aa person whose
conviction is set aside pursuant to an Article 42.12, '20, order is not a convicted
felon.@  Id.








The analysis and reasoning employed by the Texas Court of Criminal
Appeals in Cuellar  applies
equally to the instant case.  The Cuellar
court specifically noted that although article 42.12, section 20 provides for
the removal of Aall penalties and
disabilities@ upon dismissal, it
also contains express exceptions to the removal of disabilities.  See id.  Under article 42.12, section 20, subsection
one, if the discharged person is subsequently convicted of another criminal
offense, the previously dismissed former felony conviction will resurrect
itself and be made known to the trial judge. 
Tex. Code Crim. Proc. Ann.
art. 42.12, ' 20(a)(1) (Vernon Supp. 2002).  Under subsection two, if the discharged
person is applying for a license to run a child care facility or currently has
such a license, the Texas Department of Human Services, in issuing, renewing,
denying, or revoking such a licence, may consider the
fact that the person had previously received community supervision.  See id. at '20(a)(2).  According to Cuellar, the ALegislature could add
other exceptions if it so chooses,@ and otherwise, the clear
language of article 42.1, section 20 governs. 
Cuellar, 2002 Tex. Crim.
App. LEXIS 31, at *12.

Following the analyses employed by the Texas Supreme Court and the
Texas Court of Criminal Appeals, we conclude that a dismissal of a conviction
under article 44.12, section 20 operates to restore the right of a convicted
felon to serve on a jury.  With certain
express exceptions, the Legislature has provided that a dismissal under this
section operates to release the convicted felon of Aall penalties and disabilities.@  See Tex.
Code Crim. Proc. Ann. art. 42.12, ' 20 (Vernon Supp. 2002).  The Legislature did not provide that the
ability to serve on a jury is an exception to this rule, and thus, the Aclear language@ of article 42.12,
section 20 governs.  Id. 

We overrule Volkswagen=s first issue.

                                                 Hearsay
Evidence








In its second issue, Volkswagen argues that the trial court=s admission of
inadmissible hearsay evidence from a Amystery@ witness constituted
reversible error.  The trial court
allowed appellees to introduce the videotaped
statement of an eyewitness to the accident who was interviewed by a local news
crew at the accident scene.  The witness
refused to identify himself, and his face was not shown on camera.  According to this witness, AThe tire blew up and
it crossed the median and it hit the car that was headed from over there
towards over here.@  This witness was never located or deposed.

Whether to admit or exclude evidence is a matter committed to the
trial court=s sound
discretion.  Interstate Northborough P=ship v. State, 45 Tex. Sup. Ct. J. 40, 2001 Tex. LEXIS 97, at *12-13,
(Oct. 25, 2001).  To reverse a judgment
based on a claimed error in admitting or excluding evidence, a party must show
that the error probably resulted in an improper judgment.  Tex.
R. App. P. 61.1; Interstate Northborough P=ship, 2001 Tex. LEXIS 97, at
*13.  Typically, a successful challenge
to a trial court=s evidentiary rulings
requires the complaining party to demonstrate that the judgment turns on the
particular evidence excluded or admitted. 
Interstate Northborough P=ship, 2001 Tex. LEXIS 97, at
*13.  

As an initial matter, we are not persuaded that it was error to admit
the videotaped testimony.  First, the
videotaped statement did not constitute hearsay.  The testimony was not offered to prove the
truth of the matter asserted that Athe tire blew up.@  See Tex.
R. Evid. 801(d) (hearsay is a statement offered in evidence to prove the
truth of the matter asserted).  








Moreover, the trial court may have admitted the witness=s statement as an
excited utterance.  According to rule
803(2) of the Texas Rules of Evidence, an excited utterance is a statement
relating to a startling event or condition made while the declarant
was under the stress of excitement caused by the event or condition.  See Tex.
R. Evid. 803(2).  The witness=s statement was
videotaped immediately following the collision while the emergency personnel at
the scene were still attempting to extricate the lone surviving victim from her
vehicle.  In fact, the videotape includes
background noise attributed to the machinery utilized by the emergency crew.

Volkswagen argues that the videotape shows that the witness was not Aexcited or upset,@ and further argues
that the statement was given Awell after the event.@ However, the fact
that the witness=s comments were made
in response to questions, or that the comments were separated by a period of
time from the startling event are mere factors to consider in determining
whether the statement is admissible as an excited utterance.  See Salazar v. State, 38 S.W.3d 141,
153 (Tex. Crim. App. 2001).  The critical determination is whether the declarant was still dominated by the emotions, excitement,
fear, or pain of the event.  Id.; Guerra
v. State, 942 S.W.2d 28, 32 (Tex. App.BCorpus Christi 1996,
pet. ref=d).  In the instant case, the witness=s statement was
memorialized by a videotape, and thus the trial court had the singular
opportunity to judge whether the witness giving the statement was under the Astress of excitement@ caused by the
accident.  Given the context in which the
statement was made, we conclude that the trial court did not abuse its
discretion in admitting the videotape as an excited utterance.    








As a more fundamental matter, even if we were to conclude that the
trial court committed error in admitting the videotaped statement, appellant
has failed to show that the error probably resulted in an improper
judgment.  The appellees= entire case does not
rest on the admission of the videotaped statement, and thus it was in the trial
court=s discretion to admit
it.  Interstate Northborough P=ship, 2001 Tex. LEXIS 97,
at *12-13.  The appellees= theory of liability
relates to the structure of the wheel bearing assembly, that is, the tire=s separation from the
car,  and does not address any kind of
tire defect.  In fact, the tire itself
was intact following the accident.  Therefore,
the witness=s testimony that the
tire Ablew up@ is irrelevant to the
product liability defect alleged by appellees and
found by the jury.  

Volkswagen=s second issue is
overruled.

                                                 Expert
Testimony

By its third issue, Volkswagen contends that the trial court committed
reversible error when it admitted the testimony of plaintiffs= experts.  Specifically, Volkswagen argues that the
testimony of the plaintiffs= experts was not
reliable because Dr. Cox=s opinion on defect
was unsupported by independent testing or data and Mr. Walker=s opinion on causation
made no sense to Volkswagen.  Based on
these arguments, Volkswagen contends that the jury=s finding of
negligence cannot support the judgment because there is no evidence that
Volkswagen was negligent.








          The Atrial court has
broad discretion to determine admissibility@ of expert testimony and the appellate
court should Areverse only if
there is an abuse of that discretion.@  Helena Chem. Co. v. Wilkins, 47 S.W.3d
486, 499 (Tex. 2001); see also Keeton v. Carrasco, 53 S.W.3d 13, 25
(Tex. App.B San Antonio
2001, pet. denied). An abuse of discretion occurs only when a trial court=s decision is Aarbitrary,
unreasonable, and without reference to guiding rules and principles.@  Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997).  

The Texas Supreme Court recently confirmed the key principle
and guiding rule applicable to the decision whether to admit or exclude expert
testimony:

If scientific,
technical, or other specialized knowledge will assist the trier
of fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of opinion or otherwise. 

 

Helena
Chem.,
47 S.W.3d at 499 (quoting Tex. R. Evid.
702); see Spivey v. James, 1 S.W.3d 380, 382 (Tex. App.B Texarkana
1999, pet. denied).  To meet this test, Athe expert must
be qualified,@ and Athe testimony
must be relevant and be based on a reliable foundation.@ Helena
Chem., 47 S.W.3d at 499.

When an expert=s
qualifications have been challenged, Adeciding if an
expert is qualified@ requires the
trial court to Aensure that
those who purport to be experts truly have expertise concerning the actual
subject about which they are offering an opinion.@  Id.
(quoting Gammill v. Jack Williams Chevrolet,
Inc., 972 S.W.2d 713, 719 (Tex. 1998); Broders
v. Heise, 924 S.W.2d 148, 152 (Tex. 1996)); see
also Hall v. Huff, 957 S.W.2d 90, 99-101 (Tex. App.BTexarkana 1997,
pet. denied).  In this case, however, Volkswagen
does not challenge the qualifications of either disputed expert.








When the relevance of expert testimony has been
challenged,  AThe question
under Rule 702 is not whether the jurors know something about this area
of expertise but whether the expert can expand their understanding of this area
in any way that is relevant to the disputed issues in the trial.@  Glasscock v. Income Prop. Servs., Inc., 888 S.W.2d 176, 180 (Tex. App.BHouston [1st
Dist.] 1994, writ dism'd by agr.);
see also Wichita County v. Hart, 989 S.W.2d 2, 12 (Tex. App.BFort Worth
1999, pet. denied).  Volkswagen does not
challenge the relevance of the disputed expert testimony.








When the reliability of an expert=s testimony is challenged, the trial court
must Agauge@ the expert=s reliability
by ensuring Athat the
opinion comports with applicable professional standards outside the courtroom.@[3]  Helena Chem., 47 S.W.3d at 499
(quoting Gammill, 972 S.W.2d at 725‑26);
see also Southland Lloyd's Ins. Co. v. Tomberlain,
919 S.W.2d 822, 827‑28 (Tex. App.BTexarkana 1996,
writ denied).  The trial court is not
to determine whether the expert=s conclusions are
correct, but only whether the analysis used to reach those conclusions is
reliable.  Gammill,
972 S.W.2d at 728.  A trial court=s gatekeeping
function under rule 702 has not replaced cross-examination as the Atraditional and
appropriate@ method for attacking Ashaky but admissible@ evidence.  See id. 

Volkswagen=s specific challenge
with regard to Dr. Edward Cox asserts that his expert testimony was unsupported
by independent testing.  In General
Motors v. Sanchez, General Motors raised a similar complaint that the
expert did not test his automotive design theory, and the Texas Supreme Court
held Athe plaintiffs
did not have to build and test an automobile transmission to prove@ their design
defect case.  Gen. Motors Corp. v.
Sanchez, 997 S.W.2d 584, 592 (Tex. 1999). 
Instead, the Sanchez court held that Atestimony about
the engineering principles underlying@ the expert=s automotive
engineering testimony was sufficient.  Id.
at 591.  In this case, Dr. Cox offered a
complete explanation of the engineering principles underlying his opinions to
the satisfaction of the trial court and the jury.  This Court=s review of the record confirms that Dr.
Cox=s testimony,
which explains how the engineering principles and the evidence both support his
opinions, meets the reliability standards under the Helena Chemical and Gammill cases.  Moreover, if we were to accept Volkswagen=s argument that
Dr. Cox needed testing to support his opinions, we note that Dr. Cox=s opinions were
supported by Volkswagen=s testing, as
well as the lateral and vertical force testing he and Ron Walker conducted in this
case.








The remainder of Volkswagen=s challenge to Dr. Cox=s expert
testimony either faults Dr. Cox=s explanation
of how the Volkswagen Passat became defective or
questions Dr. Cox=s conclusions
rather than his methodology or his data. 
First, we note that proof of a products liability claim does not require
proof of how the product became defective:

Strict
liability does not require a specific showing of how the product became
defective. In a classic case in which a consumer found a putrefied big toe in a
plug of chewing tobacco, the consumer was not required to prove how the big toe
got there or whose toe it was.  That is
the nature of products liability. This rule evolved because a consumer is not in
a position to know the manufacturing process and how the defect might have
occurred. . . .  The rule that a consumer
does not have to show specifically how a product became defective is also based
on a consumer's right to receive a safe product from the manufacturer.  

 

Sipes v. Gen. Motors
Corp.,
946 S.W.2d 143, 155 (Tex. App.B Texarkana
1997, writ denied) (citations omitted); see also Ford Motor Co. v. Gonzalez,
9 S.W.3d 195, 199 (Tex. App.BSan Antonio
1999, no pet.).  Second, while a party
may challenge the reliability of an expert=s methodology
or data, challenges that merely attack the expert=s conclusions are improper and invasive of
the jury=s
province.  See Gammill,
972 S.W.2d at 728.

Volkswagen=s challenge
concerning Ron Walker contends that his expert opinions Asimply make no
sense@ to
Volkswagen.  Volkswagen=s contention
that Mr. Walker=s testimony Asimply makes no
sense@ is an improper
attack on his conclusions.  Cf. Gammill, 972 S.W.2d at 728.  Rather, the proper way to exclude such
testimony would be to attack the method by which the expert reached those
absurd conclusions, rather than attacking the conclusions themselves.  See id.








In this case, Mr. Walker=s testimony
made sense to the trial judge acting as gatekeeper and made sense to the
jury.  In our system of justice, the
trial judge is entrusted as gatekeeper of the evidence, the jury is entitled to
respect and deference, and the jury=s role as fact
finder is treated with sanctity and protected by the Texas Constitution.  See, e.g., Herbert v. Herbert, 754 S.W.2d
141, 143-44 (Tex. 1988) (discussing sanctity, deference, and respect for jury=s function); see
also Sanchez, 997 S.W.2d at 590 (discussing trial court=s role as
gatekeeper).  Volkswagen=s argument that
Mr. Walker=s testimony is
comparable to testimony that Athe world is
flat@ deprives the
jury of its proper respect and deference. 
Cf. Coxson v. Atl.
Life Ins. Co., 179 S.W.2d 943, 945 (Tex. 1944) (AIt is
peculiarly within the province of the jury to weigh opinion evidence, taking
into consideration the intelligence, learning, and experience of the witness
and the degree of attention which he gave the matter.@).  This Court=s review of the record confirms that Mr.
Walker=s testimony
meets the reliability standards under the Helena Chemical and Gammill cases. 
Accordingly, we overrule Volkswagen=s third issue.

                                                  Cumulative
Error

In its fourth issue, Volkswagen contends that the cumulative effect of
the trial court=s erroneous
evidentiary rulings mandates a new trial. 









Multiple errors, even if considered harmless if taken separately, may
result in reversal and remand for a new trial if the cumulative effect of such
errors is harmful.  Weidner v. Sanchez,
14 S.W.3d 353, 377 (Tex. App.BHouston [14th Dist.]
2000, no pet.); Brown v. Hopkins, 921 S.W.2d 306, 319 (Tex. App.BCorpus Christi 1996,
no writ); Fibreboard Corp. v. Pool, 813
S.W.2d 658, 695 (Tex. App.BTexarkana 1991, writ
denied).  However, before an appellate
court may reverse a judgment and order a new trial, it must determine that the
error committed by the trial court was reasonably calculated to cause and
probably did cause the rendition of an improper judgment.  Tex.
R. App. P. 44.1(a); Weidner, 14 S.W.3d at 377; Fibreboard Corp., 813 S.W.2d at 695.  An appellant must show, based on the record
as a whole, that but for the alleged errors, the jury would have rendered a
verdict favorable to it.  Weidner,
14 S.W.3d at 377.  We note that the
cumulative error doctrine infrequently finds favor with appellate courts.  See, e.g., Crescendo Invs.,
Inc. v. Brice, 61 S.W.3d 465, 481 n.16 (Tex. App.BSan Antonio 2001, pet.
denied) (ASome reported cases
refuse to discuss cumulative error points as redundant, while most examine the
points and invariably overrule them.@).  

We have previously held that the trial court did not err in its
evidentiary rulings, therefore, we overrule Volkswagen=s fourth issue
regarding cumulative error. 

                                               Prejudgment
Interest








In its fifth issue, Volkswagen contends that the trial court abused
its discretion by awarding prejudgment interest during the Alengthy delay caused
by the plaintiffs.@  Specifically, Volkswagen argues that the
trial court abused its discretion by awarding the appellees
prejudgment interest for the sixteen month period between the first and second
judgments in this case.  According to
Volkswagen, the award of prejudgment interest Aovercompensates the plaintiffs for the lengthy
delay that occurred at their insistence, and it punishes Volkswagen for its
success in the first trial.@  Volkswagen=s argument that appellees
delayed the entry of judgment is premised solely on the fact that appellees sought and obtained a new trial.  Volkswagen neither contends that any other
actions by appellees caused delay, nor does it
contend that appellees unnecessarily prolonged the
period of time elapsing between the first trial and the ultimate entry of
judgment.  

An appellate court reviews a trial court=s award of prejudgment interest under an abuse of
discretion standard.  J. C. Penney
Life Ins. Co. v. Heinrich, 32 S.W.3d 280, 289 (Tex. App.BSan Antonio 2000, pet.
denied); European Crossroads Shopping Ctr., Ltd. v. Criswell, 910 S.W.2d
45, 55 (Tex. App.BDallas 1995, writ
denied).  The statutory prejudgment
interest provisions encourage parties to seek prompt resolution of their
disputes.  Purcell Const., Inc. v.
Welch, 17 S.W.3d 398, 403 (Tex. App.BHouston [1st Dist.]
2000, no pet.).  Thus, a court may order
that prejudgment interest does not accrue during periods of delay in the
trial.  Tex.
Fin. Code Ann. ' 304.108(a) (Vernon Supp. 2002).  In considering this issue, the court
considers periods of delay caused by a defendant and periods of delay caused by
a claimant.  Tex. Fin. Code Ann. ' 304.108(b) (Vernon Supp. 2002). 

There is no authority for the proposition that pursuing one=s legal remedies
through requesting and receiving a new trial constitutes Adelay@ for the purposes of
calculating an award of prejudgment interest. Therefore, we overrule Volkswagen=s fifth issue.

 








                                            Future
Medical Expenses

By its sixth issue, Volkswagen contends that the trial court erred in
not reducing the amount of the award for Jacquelyn Guerra=s future medical
expenses to reflect the present value of these damages.  

Appellees= expert life care planner, Ginny Stegent, testified that Jacquelyn Guerra=s medical expenses
could run as high as $39,800 per year and that Jacquelyn=s life expectancy was
60 years.  There was other testimony
indicating that future medical expenses could range from $822,000 to $2,388,000.  In contrast, Volkswagen=s expert testified
that the present value of the greatest amount indicated by Stegent,
$2,208,000, was $1,376,000.  The jury
awarded appellees $2,000,000 for future medical
care.  Volkswagen thus argues that, as Aa matter of law,@ there is insufficient
evidence to support an award of more than $1,376,000.  Volkswagen cites no authority for the
proposition that damages must be reduced to reflect present value, but rather
cites C&H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 324 (Tex.
1994), for the proposition that present value Ais not simply a judgment call by the jury but a
mathematical calculation.@  

The standard of review for an excessive damages complaint is factual
sufficiency of the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998); Brownsville
Pediatric Ass=n v. Reyes, No. 13-00-273-CV,
2002 Tex. App. LEXIS 37, *10 (Corpus Christi Jan. 3, 2002, no pet.); N. Am.
Refractory Co. v. Easter, 988 S.W.2d 904, 912 (Tex. App.BCorpus Christi 1999, pet.
denied).








Texas follows the Areasonable probability@ rule for future
damages for personal injuries.  Fisher
v. Coastal Transp. Co., 230 S.W.2d 522, 525 (Tex. 1950); Rosenboom Mach. & Tool, Inc. v. Machala, 995 S.W.2d 817, 828 (Tex. App.BHouston [1st Dist.]
1999, pet. denied); City of San Antonio v. Vela, 762 S.W.2d 314, 321
(Tex. App.BSan Antonio 1988, writ
denied).  In order to recover for future
medical expenses, the plaintiff must show there is a reasonable probability
that such medical expenses will be incurred in the future.  Whole Foods Mkt. Southwest v. Tijerina, 979 S.W.2d 768, 781 (Tex. App.BHouston [14th Dist.]
1998, pet. denied).








No precise evidence is required to support an award for future medical
costs.  Id.; Pipgras
v. Hart, 832 S.W.2d 360, 366 (Tex. App.BFort Worth 1992, writ denied).  Although the preferred practice for
establishing future medical costs is through expert medical testimony, there is
no requirement that the plaintiff establish such costs through expert
testimony.  Tijerina,
979 S.W.2d at 781. The reasonable value of future medical care may be
established by evidence of the reasonable value of past medical treatment.  Id.; see Harvey v. Culpepper, 801
S.W.2d 596, 599 (Tex. App.BCorpus Christi 1990, no
writ); City of Rosenberg v. Renken, 616 S.W.2d
292, 293 (Tex. Civ. App.BHouston [14th Dist.]
1981, no writ); Thate v. Tex. & Pac. Ry. Co., 595 S.W.2d 591, 601 (Tex. Civ.
App.BDallas 1980, writ dism=d w.o.j.).  The nature of the injury and the plaintiff=s condition at the
time of trial are also relevant to determining an award for future medical
costs.  Tijerina, 979 S.W.2d at 781;
Pipgras, 832 S.W.2d at 366.  The jury can make its determination of the
amount of future medical expenses and care based on the injuries suffered, the
medical care rendered before trial, the progress toward recovery under the
treatment received, and the condition of the injured party at the time of
trial.  Rosenboom
Mach. & Tool, Inc., 995 S.W.2d at 828; Vela, 762 S.W.2d at 321.  To sustain an award of future medical
expenses, the plaintiff must present evidence to establish that in all
reasonable probability, future medical care will be required and the reasonable
cost of that care.  Rosenboom
Mach. & Tool, Inc., 995 S.W.2d at 828. 









It is within the jury=s sound discretion to
determine what amount, if any, to award in future medical expenses.  Id.; Tijerina,
979 S.W.2d at 781; see Thate, 595 S.W.2d at
601.  Issues such as life expectancy,
medical advances, and the future costs of products and services are, by their
very nature, uncertain, and therefore, appellate courts are particularly
reluctant to disturb a jury=s award of these
damages.  Brownsville Pediatric Ass=n, 2002 Tex. App. LEXIS
37, at *12-13.  However, this standard of
review is Anot so nebulous that a
reviewing court will uphold a jury award for future medical expenses when there
is no evidence.@  Harvey, 801 S.W.2d at 599.    In
this case, the trial court instructed the jury to calculate what sum of money, Aif paid now in cash@ would compensate
Jacquelyn Guerra for medical care Athat in reasonable
probability will be required in the future.@  Under Mo.
Pac. R.R. Co. v. Kimbrell, 334 S.W.2d 283, 286
(Tex. 1960), the jury was qualified to make the calculation regarding future
medical expenses based on its common knowledge of interest rates, and no
evidence of the earning power of money was required to be introduced.  See Rendon v. Avance, 67 S.W.3d 303 (Tex. App.BFort Worth 2001, pet.
filed).  We presume the jury properly
followed the trial court=s instructions.  See id.

Moreover, the evidence shows that Volkswagen=s expert Ricardo
Cortez based his estimation of present value by assuming a discount rate of
three percent and a growth rate of only one percent.  Nevertheless, Volkswagen=s expert conceded that
medical expenses could increase by as much as twenty to thirty times over the
next sixty years, and that it is impossible to project how much expenses will
actually increase.  Given this testimony,
the award of future medical expenses was within the jury=s sound
discretion.  See Rosenboom
Mach. & Tool, Inc., 995 S.W.2d at 828; Tijerina,
979 S.W.2d at 781; Thate, 595 S.W.2d at 601.

We overrule Volkswagen=s sixth issue.  

                                                       New
Trial

In its seventh and final issue, Volkswagen argues that the trial court
abused its discretion when it Aarbitrarily discarded@ the verdict from the
first trial and granted the plaintiffs a new trial Ain the interest of
justice.@  Volkswagen contends that (1) the trial court abused
its discretion by granting a new trial, (2) an order granting a new trial
should be subject to review, (3) by granting a new trial without any basis or
any explanation, the trial court violated Volkswagen=s constitutional
rights, and (4) this Court should render judgment on the verdict from the first
trial in the Ainterest of justice.@








An order granting a new trial within the trial court=s period of plenary
power is not subject to review either by direct appeal from that order, or from
a final judgment rendered after further proceedings in the trial court.  Cummins v. Paisan
Constr. Co., 682 S.W.2d 235, 236 (Tex. 1984)(per curiam); Vandehaar v.
ALC Fin. Corp., 25 S.W.3d 406, 410 (Tex. App.BBeaumont 2000, pet. denied).

It appears that Volkswagen has previously pursued this same issue, in
this case, in the Texas Supreme Court by writ of mandamus.  See In re Volkswagen of Am., Inc., 22
S.W.3d 462 (Tex. 2000).  The supreme
court denied the petition for mandamus, but Justice Hecht, joined by Justice
Owen, dissented on grounds that he believed that Awhile trial courts should have broad discretion
to grant a new trial in the interest of justice, that discretion should not be
insulated from all review, and trial courts should be required to state reasons
for their ruling.@  Id. at 462.  The Texas Supreme Court had previously denied
a similar petition for mandamus in another case, In re BMW, 8 S.W.3d 326
(Tex. 2000), with Justices Hecht and Owen again dissenting.








As an intermediate appellate court, we are bound to follow the Texas
Supreme Court=s expressions of the
law and to leave changes in the law to that court.  See Dow Chem. Co. v. Rylander,
38 S.W.3d 741, 746 (Tex. App.BAustin 2001, pet.
denied), cert. denied, 122 S.Ct. 466 (2001); Austin
v. Healthtrust, Inc., 951 S.W.2d 78, 80 (Tex.
App.BCorpus Christi 1997), aff=d, 967 S.W.2d 400 (Tex.
1998).  Under established law, the trial
court=s order granting appellees a new trial is not subject to review from a final
judgment rendered after further proceedings in the trial court.  Cummins, 682 S.W.2d at 236.

We overrule Volkswagen=s seventh issue.

Having overruled each of Volkswagen=s issues on appeal, the judgment of the trial
court is affirmed in its entirety.

 

____________________      

ROGELIO
VALDEZ

Chief
Justice

 

Publish.

Tex. R. App. P. 47.3.

 

Opinion
delivered and filed

this 9th  day of May , 2002.

 

 

 

 











[1]The
trial court entered its dismissal pursuant to an earlier version of this
article.  See act of May 27, 1965, 59th
Leg., R.S.., ch. 722, '7, 1965 Tex. Gen.
Laws 317, 492 (amended 1983, 1989, 1993). 
However, subsequent changes have not been substantive, therefore, all
references herein are to the current version of this article.  See Tex.
Code Crim. Proc. Ann. art. 42.12, ' 20 (Vernon Supp.
2002).





[2] We note
that Dempsey is distinguishable from Glenn and the instant
case.  The juror in Dempsey had
been convicted of a state jail felony which rendered him ineligible for a
dismissal of the conviction under article 42.12.  Dempsey, 38 S.W.3d at 289.  Moreover, the parties therein conceded that
the juror was disqualified.  See id. at
289 n.4. 





[3]The
Texas Supreme Court has also identified six nonexclusive Robinson
factors that may be considered when evaluating testimony based on the type of theories
typically subjected to peer review and rate-of-error analysis, but the court
has since Arecognized
that the Robinson factors may not apply to certain testimony.@  See Helena Chem., 47 S.W.3d at 499
(citing Gammill, 972 S.W.2d at 726); E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d
549, 557 (Tex. 1995) (including factors concerning Apeer
review  publication@ and Apotential
rate of error@ which Gammill
recognized Asimply do not fit@ when
reviewing engineering expert testimony)). 
This case is like Gammill in that it
involves engineering testimony that should not measured against the Robinson
factors.