**Richard Dale SHAW, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–87–145–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 23, 1988.
Rehearing Denied Feb. 22, 1989.

Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Delonia A. Watson, Asst., Fort Worth, for the State.

## OPINION

KELTNER, Justice.

Richard Dale Shaw appeals his conviction by a jury of the offense of aggravated sexual assault. *See* TEX.PENAL CODE ANN. sec. 22.021 (Vernon 1989). The jury found that he used and exhibited a deadly weapon in the commission of the offense and assessed his punishment at sixty-seven years in the Texas Department of Corrections.

Shaw does not question the sufficiency of the evidence. However, he brings four points of error contending the trial court erred in admitting the testimony of Jane Bingham, an expert witness called for the State, and ruling that the prosecutor's jury argument was not a comment on his failure to testify. We affirm the conviction of the trial court.

The victim testified that Shaw appeared at her house after her husband had left for work, but before she had taken her children to school. The victim was acquainted with Shaw because he was the husband of her best friend. The victim testified that Shaw had raped her before. She told Shaw's wife of the previous rape, but did not report it to the authorities.

The victim testified that she repeatedly asked Shaw to leave but he refused. Finally, she went into her bedroom and locked the door so she could call Shaw's wife. However, she heard Shaw talking to her children, became frightened for their safety and came out of the bedroom.

The victim testified she told her children to get in the car so she could take them to school. Shaw also got into the car. When they arrived at the school, the victim's two sons got out of the car. When the victim tried to get out of the car, Shaw put his hand on her knee and squeezed her leg. As a result, she did not get out of the car.

Shaw told her to return to her home. Upon arriving, Shaw guided her to the front door and instructed her to unlock the door. When she moved too slowly, Shaw grabbed her wrist, stuck the keys in the lock and unlocked the door. After they entered the house, Shaw locked the door. He requested more coffee and the victim complied.

Thereafter, Shaw slammed his coffee cup on the table, stood up and rushed the victim. After a struggle, Shaw carried her to the bedroom. Shaw directed her to undress and when she refused, he forcibly removed her clothes. When she refused to engage in oral sex, he took a gun out out of his jeans, pointed it at her head, and threatened to kill her if she failed to comply with his demands. He also displayed a knife and told her he had been to the pen twice and knew how to cut people without killing them. Shaw forced the victim to engage in oral, rectal, and vaginal sexual activity. During the attack, Shaw repeatedly directed the victim to do certain things, and inquired into her sex life with her husband. He also produced a dildo and a tube of K–Y jelly and used both on the victim.

After the attack, the victim picked up the gun while Shaw was in the bathroom. However, she could not determine how to use the gun and Shaw took it from her. While Shaw was in the house, the victim called her sister. However, she testified she could not talk about the sexual assault because of her fear of Shaw.

Immediately after Shaw left, the victim called the Rape Crisis Center and asked for advice. Thereafter, she changed the sheets on the bed, took a shower, picked up her son from school, then drove to a pet shop to pick up a guinea pig cage for her son's birthday party later that day. She also drove to her sister's work place to visit with her. She intended to seek her sister's advice about what to do as her sister had been previously raped. However, her sister was busy with a customer and was unable to talk. After that she ran various errands.

Finally, she went to Shaw's home in order to tell Shaw's wife about the attack. She stopped at the house because Shaw's truck was not parked outside. However, she saw Shaw immediately upon entering the house and became frightened. She went through the house into the backyard to talk with Shaw's wife. She was afraid to say anything about the rape because she thought Shaw could hear her and she had one of her children with her.

After returning home, she called the Rape Crisis Center, her husband, and the police. She provided the police with her ripped clothing, and the bed linen. She also went to the hospital for a rape examination.

Shaw did not testify. However, several witnesses, who were friends and business acquaintances, provided alibis which, if believed, would have cleared Shaw of involvement in the crime. Shaw's wife testified that the victim did not seem excited or agitated at the time of her visit to Shaw's house.

■ In the first three points of error Shaw complains that the trial court erred in admitting the testimony of Ms. Jane Bingham. Shaw contends that Bingham was not shown to be qualified as an expert, was allowed to testify without a proper foundation, and that her testimony denied Shaw due process of law. Specifically, Shaw complains that Bingham, who had no personal knowledge of the case was allowed to testify that a rape occurred and that Shaw was the rapist.

The State called Bingham to explain that the victim's conduct after the rape was consistent with the offense with which Shaw was charged. The main thrust of Bingham's testimony was that it was not abnormal for a victim of an "acquain-

tance," "power-rape" to remain calm after the rape and delay contacting authorities.

This sort of testimony regarding emotional response to violence is admissible when such information is relevant. *Fielder v. State*, 756 S.W.2d 309, 319–20 (Tex. Crim.App.1988).

Although the trial court's handling of this testimony was not perfect, when viewed in retrospect, the court's error was harmless given the court's instructions and rulings.

Bingham testified that she is assistant dean for Community Services at Tarrant County Junior College, and that in connection with her employment, she conducts a statewide program on the investigation and treatment of child sexual abuse. Prior to holding her position of assistant dean, she was director of the Rape Crisis program for Tarrant County for four years. Bingham related that she had undergraduate degrees in both religion and psychology, and a Master of Divinity degree. She testified that she had attended over 500 hours of continuing education in the field of sexual assault. She also worked with victims of sexual assault for ten years, working with approximately 1,000 victims.

At the beginning of her testimony, Bingham admitted that she had never talked with the complaining witness or any other fact witnesses in the case. She continually stated that her knowledge of the case was limited to a witness statement from the complaining witness and the prosecutor's oral summary of the complaining witness's testimony at trial.

Upon Shaw's request, the court ordered that Bingham's testimony be received outside the presence of the jury. After both direct and cross-examination were completed, the court held that Bingham was qualified to testify as an expert and overruled Shaw's objection that her testimony would invade the province of the jury.

Thereafter, Bingham testified before the jury. She testified to the various categories of rape situations and the different types of responses those situations invoke. Specifically, she testified that it was not abnormal for the victim of an "acquain-

tance," "power-rape" to remain calm after the rape and to delay reporting the incident. Additionally, Bingham testified that the "alleged attacker" fit the "power-rapist" profile. She said that a "power-rapist" is a person who uses whatever force is necessary to threaten and gain control of the victim and to carry out the offense without resistance. She testified that such an assault is usually carried out over an extended period of time with multiple offenses. The victim is generally unharmed even though intimidated by threats of force. She also testified that "power-rapists" generally have the compulsion to use objects during the attack and inquire into sexual feelings and experiences. This scenario fit the victim's testimony.

Although the following testimony is lengthy, it demonstrates the trial court's handling of this issue. The following is a chronological summary of testimony and objections from Bingham's testimony.

DIRECT EXAMINATION

Q. What are the types [of rape situations]?

A. There's the stranger rape and the acquaintance rape.

. . . .

Q. Which category would ... this case with L.C. [complaining witness] fall into?

A. The acquaintance rape situation.

MR. BURNS: Your Honor, I'm going to object to the testimony of this witness being asked if this particular case before this jury falls into a category or anything of that nature.

It's for the jury to decide, Your Honor, and it deprives the accused in this case of a trial by jury rather than ... State-sponsored experts.

THE COURT: Overruled.

. . . .

Q. ... Are there categories for ranges or reactions or response by victims?

A. Yes, there are.

. . . .

Q. Where on that continuum would L.C. fall?

MR. AULTMAN: Now again we object to her testifying on the L.C. deal because it has not been proved yet that there was a rape, and that's for the jury to decide. We object to her saying what the L.C. deal was.

THE COURT: For purposes of the record, ladies and gentlemen of the jury, the determination of whether or not a sexual assault or rape occurred is definitely within your purview, and you alone are the determiners of the fact. This witness is presented as an expert witness, and you will consider her as an expert witness for purposes of psychological profile.

MR. BURNS: Your Honor, we object to the Court's—last part of the Court's instruction regarding that the jury will consider this witness as an expert witness being an improper comment on the evidence.

THE COURT: The weight to be given to the testimony of this witness is strictly within the jury's purview. They may consider any part or none of this witness' testimony in making their decision.

At this point, Shaw's attorney asked permission to take the witness on voir dire.

The Court removed the jury and permitted the questions. Thereafter, the jury was recalled and the attorney was permitted to ask the same voir dire questions in front of the jury.

BY MR. AULTMAN:

Q. You do not even know if there was a rape, do you?

A. No, sir, I do not.

Q. And you have not even talked to the so-called victim, have you?

A. No, sir, I have not.

....

DIRECT EXAMINATION CONTINUED

Q. What about what she did after the attack was over?

A. After the attack when she cleaned up—

MR. AULTMAN: Pardon me.

Your Honor, may we ask that the Court instruct counsel for the State to say the alleged attack instead of saying the attack? Because it assumes—

THE COURT: Counsel is so instructed.

....

Q. Which one of those categories [of victim responses] is L.C. in?

A. She falls in the—

MR. BURNS: Again, Your Honor, he's asking her to put L.C. in a category that assumes an offense that is for the jury to determine, and we're objecting to a trial by expert witness, the State-sponsored expert witness rather than a trial by jury. We object to it.

THE COURT: Overruled.

....

Q. Which category did L.C. fall in?

A. She falls into the—the situation where the victim delays reporting.

....

THE WITNESS: From what I understand from her testimony and from her statement, this Defendant falls within the power rape category.

MR. BURNS: Well, she says as to what this Defendant does, she has no idea what this Defendant does or doesn't do, and we object to her testifying as to this Defendant.

Now, what she knows about an assailant or information or something, that's one thing.

The calculated and pointing toward this Defendant is a clear violation of the Rules of Evidence and deprivation of due process of law. We object to it.

THE COURT: I'll sustain as to the terminology used. Overruled otherwise.

MR. BURNS: We're going to have to ask for an instruction of the jury to disregard that last statement.

THE COURT: Denied.

Q. Ms. Bingham, with respect to this question, I'd asked you from what you know from L.C.'s statement and her testimony, what can you tell us about the alleged attacker, and would you refer to the attacker with those words?

A. Okay. This alleged attacker fits the power rapist profile.

. . . .

Q. What specifically tells you that the attacker in the L.C. situation is in the power rapist category?

MR. BURNS: Well, Your Honor, again he's saying attacker. There's no evidence of that. It's again, you know, there's an alleged attacker and she doesn't know. She hasn't talked to her. She's testified she doesn't know. We therefore object to it.

THE COURT: Sustained as to the terminology used in the question.

MR. BURNS: And ask for an instruction to disregard.

THE COURT: Denied.

. . . .

Q. Ms. Bingham, my question is: What specifically tells you that the alleged attacker in this situation is a power rapist?

A. She mentioned various offenses that occurred during a considerable period of time; . . .

The mood state of the rapist was that of anger, so the anxiety would be verified in that.

MR. BURNS: Your Honor, we again object to the terminology of rapist.

THE COURT: Sustain as to terminology.

MR. BURNS: Ask for an instruction of the jury to disregard.

THE COURT: Denied.

Q. Ms. Bingham, going back to the different types of reporting, you've testified that L.C. fell into the situation of a victim that hesitated.

MR. AULTMAN: We object to L.C. fell into . . . the category that hesitated because . . . of the wording of the question.

THE COURT: Sustained.

MR. AULTMAN: We'd ask the Court to instruct the jury not to consider that wording.

THE COURT: Denied.

. . . .

CROSS–EXAMINATION

Q. . . . The only people you've heard from has been the State of Texas, isn't it?

A. That's right.

Q. And he told you in his, whatever he wanted to relate to you. You didn't sit in and listen to the testimony like the ladies and gentlemen of this jury; is that correct?

A. That's correct.

Q. You were not here to judge the—to see the way the lady testified or judge her credibility or anything of that nature?

A. No.

Q. In fact, you've never talked to her, have you?

A. That's correct.

. . . .

Q. And you have no way of telling if there was any kind of a rape in this case one way or the other now, can you?

A. No.

We share the dissent's concern regarding the jury's possible misinterpretation of Bingham's testimony.

The trial court should have prevented any of Bingham's testimony, indicating that a rape occurred or that Shaw was the rapist, from going to the jury. However, the court's error in this regard was harmless because of the court's continuous statements to the jury, the defense attorney's voir dire and cross-examination, and the judge's continual rulings on objections. These steps eliminated the possibility that the jury could have misinterpreted Bingham's testimony to mean that a rape occurred and that Shaw was the rapist. The jury was continually reminded that Bingham was not and could not testify whether the rape occurred or Shaw was the rapist. During final argument, the jury was once again reminded by the following episode:

[PROSECUTOR]: Jane Bingham testified about that continuum of emotion that any person experiences when they have gone through a traumatic experience, and she compared that to what L.C. did, said and how she reacted. She also

gave you a profile of what is termed a power rapist, and she gave you examples on that, how Richard Dale Shaw or the assailant in this case fit into that profile.

MR. BURNS: We again are going to object that first of all there's no properly admitted testimony before this jury comparing Richard Dale Shaw or anyone else applying that general fact situation to anyone in this case. For that reason, Your Honor, we object as being outside the record and improper to present it that way.

THE COURT: Sustained.

MR. BURNS: We'd ask that the Court instruct the jury not to or to disregard that last statement of the prosecutor.

THE COURT: Ladies and gentlemen, you are instructed to disregard the last statement of the prosecutor and not to consider the same for any purpose whatsoever.

MR. BURNS: I have to ask for a mistrial at this time.

THE COURT: Denied.

MR. BURNS: Note our exception.

MS. DAVIS: So I do not go against the Court's ruling, is the Court instructing me I cannot argue about Jane Bingham's testimony?

THE COURT: You aren't restricted of your argument on Jane Bingham's testimony. Stay within the record, however.

As a result, we overrule the defendant's first three points of error.

In his fourth point of error, Shaw complains the prosecutor commented on his failure to testify. Specifically, Shaw complains about the following argument:

MS. DAVIS: He [defense counsel] said, we don't convict someone just because a woman says she's been offended. L.C. was not just offended on that day. He didn't just get a free feel, and who else is going to say it but L.C.? Do you think Richard Shaw is going to pick an audience in front of to—to commit his offense in front of? Do you think he's going to wait until somebody's there to see? No. So who else is going to say it except the victim?

No one is on trial—

MR. BURNS: Your Honor, excuse me. We're going to object to the last argument as a comment in violation of Article 38.08 of the Texas Code of Criminal Procedure.

THE COURT: Overruled.

A prosecutorial comment directed toward defendant's failure to testify is accorded special treatment because of the unique constitutional and statutory protection attached to defendant's right to remain silent. U.S. CONST. amend. V; TEX. CONST. art. I, sec. 10; TEX.CODE CRIM. PROC.ANN. art. 38.08 (Vernon 1979).

A direct comment on a defendant's failure to testify results in reversible error unless the error is shown to be harmless beyond a reasonable doubt. *Garrett v. State*, 632 S.W.2d 350, 352 (Tex.Crim. App. [Panel Op.] 1982). An indirect comment on the defendant's right to remain silent may also be reversible error if the comment calls for a denial of facts or for contradictory evidence that only the defendant is in a position to give. *Nickens v. State*, 604 S.W.2d 101, 102 (Tex.Crim.App. 1980) (en banc).

In determining whether the language used was intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify, we must consider the facts and circumstances of each case. *Bird v. State*, 527 S.W.2d 891, 894 (Tex.Crim.App.1975).

It is clear that the prosecutor's comments were in response to defense counsel's arguments. Defense counsel had argued this was a case of "just cry rape." Specifically, defense counsel argued that the medical and forensic evidence did not establish that the victim had been sexually assaulted and suggested that the victim may have consented to the attack. Both defense counsel mentioned that only the victim testified to the rape.

In the context in which the comments were made, the prosecutor was arguing that the victim's testimony alone estab-

lished the rape and the jury would be justified in relying on that testimony. Under the circumstances, we do not find that the comment was even an indirect comment on the defendant's failure to testify. As a result, we overrule Shaw's fourth point of error.

Having overruled all of Shaw's points of error, we affirm his conviction.

We note that Shaw has appealed not only from the rape conviction, but from revocation of his probation from the offense of forgery by passing of a check. The trial court found the evidence was sufficient to support the State's allegations that Shaw committed the aggravated sexual assault and on this and another ground, revoked Shaw's probation.

Shaw has filed written notices of appeal for both offenses. However, the only assignments of error were from the conviction of aggravated sexual assault. Inasmuch as we have affirmed the judgment of the trial court in that regard, we also affirm the revocation of probation.

HILL, J., dissents joined by SPURLOCK and LATTIMORE, JJ.

HILL, Justice, dissenting.

I respectfully dissent, because I cannot say the trial court's errors as described by the majority were harmless beyond a reasonable doubt.

As noted by the majority, Jane Bingham was qualified as an expert in the field of sexual assault. I agree that if her testimony had properly been limited to hypotheticals that it would have been admissible. However, the majority also acknowledges the trial court erred in allowing Bingham to testify that this was a social acquaintance rape and Shaw was a power rapist.

We must reverse unless we determine, beyond a reasonable doubt, that the error made no contribution to Shaw's conviction or to his punishment. *See* TEX.R.APP.P. 81(b)(2).

The issue of whether an assault occurred was a critical issue. After the assault was to have taken place, the complaining witness did not act as one might expect a victim to act. Instead of reporting the incident to anyone, she performed several routine errands and visited with friends and family, including Shaw's wife, all without mentioning the attack. Bingham was called as a witness to explain to the jury why L.C., the complaining witness, might have acted as she did. As the majority admits, Bingham, over objection, repeatedly characterized this event as a rape and Shaw as a rapist.

I disagree with the majority's conclusion that this error was harmless because of the fact that Bingham admitted on cross-examination she did not know whether a rape had occurred, and in view of the fact that the judge instructed the jury it was up to them to determine whether an assault occurred. The difficulty with the majority's position is that it relies on a presumption that the witness's message, that she did not know whether there was a rape, and the judge's message, that it was up to the jury to decide whether there was a rape or not, got through to the jury. The problem with the majority's presumption is that both the witness and the judge were sending mixed signals to the jury on this issue.

Although Bingham testified she did not actually know whether there had been a rape, more frequently she was in some way characterizing the events as a rape and Shaw as a rapist. Although the trial judge instructed the jury that it was up to them to decide whether a rape had occurred, he occasionally overruled objections to such testimony by Bingham and on more than one occasion declined to instruct the jury to disregard such testimony after sustaining objection to it. He also told the jury it could consider any part of the witness's testimony in making its decision. I believe a juror could have concluded it was proper to consider Bingham's testimony that a rape had occurred and that Shaw was a rapist in reaching a conclusion on the issue of Shaw's guilt or innocence. For this reason, I am unable to determine. beyond a reasonable doubt that the error made no contribution to the conviction or to the pun-

ishment. Accordingly, I would reverse and remand for trial.