NO. 12-07-00256-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


BILLY DARNELL LONG,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

SUPPLEMENTAL MEMORANDUM OPINION ON REHEARING


 On November 23, 2008, we reversed the trial court's judgment in this case and remanded the
case for a new trial. See Long v. State, No. 12-07-00256-CR, 2008 Tex. App. LEXIS 8885 (Tex.
App.-Tyler Nov. 26, 2008, no pet. h.) (mem. op., not designated for publication). The State has filed
a motion for rehearing raising three issues. We overrule the State's issues and deny rehearing. 

Introduction

 In its motion for rehearing, the State argues that we should reconsider whether Appellant waived
his complaint because his brief was inadequate, whether it was error to admit expert testimony, and
whether Appellant was harmed. The arguments about Appellant's brief merit consideration. As we
stated in our prior opinion, Appellant's brief was sparse in its treatment of the record and authorities. 
See Long, 2008 Tex. App. LEXIS 8885, at *13 n.1. There is tension between the requirement that a
party make clear and concise arguments in its brief and the rule that substantial compliance with the
briefing rules is sufficient. See Tex. R. App. P. 38.1(i), 38.9. The State argues that it was denied an
opportunity to respond because Appellant's arguments were not fully developed. Our holding that
Appellant's brief was adequate rests heavily on the substantial compliance part of the equation. 
Therefore, we will address the State's arguments on rehearing.


Adequacy of the Appellate Brief

 To present an issue for consideration on appeal, a party's brief must contain a clear and concise
argument with appropriate citations to legal authority and to the record. Tex. R. App. P. 38.1(i);
Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996). Appellant's brief was adequate to
state his case. In the statement of facts, Appellant set out that the expert "thought that her role was to
review the evidence then decide whether she can form an opinion about what occurred." Along with
citations to the record, Appellant catalogued that the expert gave answers to questions that showed she
"believed [the complaining witness's] version" and that the witness was permitted over objection "to
testify to specific conduct" during the witness's testimony that "bolstered [her] credibility." Appellant
never wove these specific statements into his argument, but he did provide reasonably precise citations
to assist the court in locating the statements he argued were objectionable.

 The State argued in its reply brief that this briefing was inadequate, and "[a]s best as can be
imagined, and this is not supposed to be a guessing game, the testimony considered objectionable by
Appellant can be found somewhere in pages 279-82 and pages 310-21 of Volume III of the record, the
entire span of [the expert's] direct testimony." This is about fifteen pages of testimony. The State cites
one of our recent decisions in which we wrote that it is "not our task to pore through hundreds of pages
of record in an attempt to verify an appellant's claims." See Dinger v. State, No. 12-06-00190-CR,
2007 Tex. App. 6253, at *15 (Tex. App.-Tyler 2007, pet. ref'd) (mem. op., not designated for
publication) (citing Alvarado v. State, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995)). This case is
different. Appellant did cite to the record in his statement of facts, and reviewing approximately fifteen
pages of testimony is not the kind of problem we were addressing in Dinger. 

 As far as legal citations, Appellant properly cited Texas Rule of Evidence 702 along with the
leading cases in this area of the law, specifically Schutz v. State, 957 S.W.2d 52 (Tex. Crim. App.
1997), Yount v. State, 872 S.W.2d 706 (Tex. Crim. App. 1993), and Duckett v. State, 797 S.W.2d 906
(Tex. Crim. App. 1990). Once again, Appellant's application of the law to the facts was cursory. He
argued, simply, that it was error to allow the expert witness to testify that the complaining witness was
telling the truth and error to allow her to testify that she did not see any reason to question the veracity
and truthfulness of the complaining witness's testimony. Under the liberal construction given to the
appellate rules, see Tex. R. App. P. 38.9, this is sufficient to raise an issue for appellate consideration. 
We overrule the State's first issue.

Admissibility of Expert Testimony

 The State argues that the expert testimony in this case was permissible because when a "child-victim is impeached, an expert may testify about behavioral characteristics common to those victims
and explain why they may have acted in a way that to a layperson may appear inconsistent with a claim
of abuse." The State cites Duckett as support for this contention, but its reliance is misplaced. (1) In
Duckett, the court approved testimony by an expert to explain the complaining witness's "seeming
illogical behavior" on the witness stand by identifying its "emotional antecedents" in an effort to help
the jury better assess the witness's credibility. Duckett, 797 S.W.2d at 916, 920. The witness who
"changed her testimony or appeared confused" was apparently suffering from "Child Sexual Abuse
Syndrome," and the court approved the testimony on that basis even though it had the indirect effect
of bolstering the witness's credibility. (2) 

 The problematic (3) parts of the expert's testimony in this case were not explanations of unusual
behaviors, nor were they tailored to the attacks from the defense. Instead, the expert testified that the
complaining witness's account was neither diminished nor exaggerated and that this was important
because either would indicate that she was not telling the truth. The expert also testified that she had
viewed most of the trial and responded "no" when asked if there were "any crying questions or anything
like that that just jump out at you and says, you know what, we need to back up and reconsider some
things." She ended her testimony on direct examination by agreeing with the prosecutor that the child's
behavior, including her reluctance to report the assault and her testimony on the witness stand, was
consistent with the child's being a victim of a sexual assault. Finally, the witness testified that she did
not testify, either because she refused or because she was not called, when she could not give the side
hiring her a "good opinion," and that she understood the importance of her "word" and her "decision"
and would not jeopardize either with her testimony. 

 This was not expert testimony about the witness generally that does not express an opinion as
to whether the witness is telling the truth, see Tamplin v. State, No. 14-01-01253-CR, 2002 Tex. App.
LEXIS 8439, at *7-8 (Tex. App.-Houston [14th Dist.] Nov. 27, 2002, pet. ref'd) (mem. op., not
designated for publication), or about the interpersonal dynamics of acquaintance rapes. See Shaw v.
State, 764 S.W.2d 815, 817-18 (Tex. App.-Fort Worth 1988, pet. ref'd). (4) Nor was it permissible expert
testimony that incidentally touched on the credibility of the witness. See, e.g., Duckett, 797 S.W.2d at
920 ("The situation would be different if the trial court had permitted [the expert] to give an opinion
whether he believed S__S__ was telling the truth or could be believed."). Instead, and in its context,
this was impermissible testimony that the complaining witness was telling the truth. See, e.g., Schutz,
957 S.W.2d at 59 ("Expert testimony does not assist the jury if it constitutes a direct opinion on the
truthfulness of a child complainant's allegations."). We overrule the State's second issue.

Harmless Error

 Finally, the State argues that any error in admitting the challenged expert testimony was
harmless. The State argues that error can be harmless even in the absence of a confession or
incontrovertible physical evidence and that the court in Schutz held that impermissible expert testimony
can be harmless when it merely does the jury's job for it. The State also argues that there is no harm
because there is no direct evidence that the assault did not occur. These arguments are two sides of the
same coin. The evidence need not be overwhelmingly powerful for an error to be harmless, but the
State has cited no authority that there must be direct evidence contradicting the complaint in order for
there to be harm. 

 We cited Schutz on the issue of an expert's drawing a conclusion that the jury is to make. See
Long, 2008 Tex. App. LEXIS 8885, at *28-30. In this case, the expert went beyond simply applying
well understood standards to a given fact pattern. Instead, she staked her reputation on her conclusion
that there was nothing troubling about the complaining witness's testimony and the State's case. This
was important because the case rested on the credibility of that witness and the State argued to the jury
that it should believe the complaining witness because the expert did. After considering all of the
evidence, we do not have a fair assurance that the error did not influence the jury, or influenced the jury
only slightly. See Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). We overrule the
State's third issue.


Disposition

 We overrule the State's motion for rehearing.


 SAM GRIFFITH 

 Justice




Opinion delivered February 18, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.































(DO NOT PUBLISH)
1. The State acknowledges that Cohn v. State, 849 S.W.2d 817, 818 (Tex. Crim. App. 1993) modified
Duckett to allow admissible expert testimony irrespective of whether the witness had been impeached. 
2. In Cohn
, 849 S.W.2d at 819-20, the court held that the "bolstering" rubric was an inappropriate way to
evaluate these questions. See also Rivas v. State, No. PD-1113-07, 2009 Tex. Crim. App. LEXIS 98, *13-16 (Tex.
Crim. App. Jan. 28, 2009) (discussion of bolstering and Cohn).
3. Appellant did not challenge the expert's general testimony about, for example, the delays that occur in the
reporting of child sexual assaults.
4. The State cites Tamplin and Shaw in its motion for rehearing. We note that the court in Shaw found
admission of expert testimony to be error. See Shaw, 764 S.W.2d at 818.