**Opinion filed August 21, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00143-CR

_____

## JOHN EDWARD HOLMES, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39464**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant, John Edward Holmes, guilty of sexual assault[1] and assessed punishment at confinement for a term of fifteen years. The trial court sentenced Appellant accordingly. Appellant asserts a sufficiency issue and an evidentiary issue on appeal. We affirm.

### I. *The Charged Offense*

The grand jury indicted Appellant for the offense of aggravated sexual assault. The jury found Appellant guilty only of the lesser included offense of

---

[1]TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (West 2011).

sexual assault. A person commits the offense of sexual assault if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent." PENAL § 22.011(a)(1)(A). As charged in this case, "without consent" means that the actor compels the other person to submit or participate by the use of physical force or violence or that the actor compels the other person to submit or participate by threatening to use force or violence against the other person and that the other person believes that the actor has the present ability to execute the threat. *See id.* § 22.011(b)(1), (2). The offense of sexual assault is a second-degree felony. *Id.* § 22.011(f). The range of punishment for a second-degree felony is confinement for not more than twenty years or less than two years. *Id.* § 12.33(a).

## II. *Evidence at Trial*

The victim, C.S., testified that she lived with Appellant from October 26, 2011, to December 3, 2011, in Midland, Texas. The two met at a bus station in Montgomery, Alabama, in April of that year, and after several months of communication, C.S. moved in with Appellant and began a romantic relationship with him. The relationship deteriorated after C.S. learned of Appellant's possible infidelity, and C.S. confronted him about it at his place of work. After Appellant attempted to dispel C.S.'s concerns, C.S. left but returned later to pick him up at the end of his shift. On the way back to Appellant's apartment, Appellant became increasingly angry at C.S.'s silence toward him. After they arrived at the apartment, C.S. remained silent as Appellant threatened to rape her.

Appellant then moved some of C.S.'s belongings outside, and as C.S. exited the apartment, Appellant grabbed her by the hair, placed her in a headlock, and took her back into the apartment. C.S. testified that the headlock restricted her breathing. She said that Appellant stated, "[Y]ou're going to give me my p---y." Appellant continued to assault her and restrict her breathing before he tore off her

2

clothes, took her into the bedroom, threw her onto an air mattress, forced open her legs, and penetrated her vagina with his penis. C.S. said Appellant "violently" raped and hurt her. She testified that he said after the assault, "That's my p---y" and "a raped p---y is the best p---y." After the rape, C.S. told Appellant she was going to report the rape to the police. Appellant responded, "No. We're going to take a shower," and he attempted to wash away the evidence from her vaginal area with antibacterial soap.

C.S. remained at the apartment that night, fearing that Appellant would harm or kill her if she attempted to leave. C.S. dropped off Appellant at work the next morning and returned to his apartment. C.S. packed her belongings and vandalized Appellant's apartment. Afterward, C.S. went to Midland Memorial Hospital for treatment and a sexual assault evaluation.

Donna Doyle, a certified sexual assault nurse examiner (SANE), testified she was a nurse at Midland Memorial Hospital. Doyle testified she took a medical history from C.S. and performed a sexual assault examination shortly after C.S. arrived at the hospital. Doyle completed a body surface and genital examination. She collected hair and blood evidence from C.S.; scrapings and swabs from C.S.'s fingernails; swabs from C.S.'s mouth, vagina, and anus; and a debris swab from a bite mark. Doyle noted that C.S. had bruises on her fingers, arms, and above an elbow; a bite mark on her inner upper arm; and vaginal injuries consistent with sexual assault. Doyle testified that C.S. identified Appellant as her attacker, but Doyle said she could not rule out the possibility that the bruises and injuries resulted from consensual sex.

Detective Rodriguez testified she took C.S's statement at the hospital just before the SANE examination. Detective Rodriguez's investigation led her to suspect Appellant of the crime. When Appellant was questioned at the Midland

Police Department, after he received and waived his *Miranda*[2] rights, Appellant never mentioned he had a sexual relationship with C.S. However, when the DNA samples were taken, Appellant volunteered to Detective Steven Sanders of the Midland Police Department, without being asked any questions, that Appellant had sexual relations with C.S. "all the time."

Detective Sanders testified that he took DNA swabs from Appellant and gave them to Detective Rodriguez. Detective Rodriguez obtained the results of the SANE examination and logged them into evidence; he did the same with the DNA swabs. Those DNA swabs were tested by Caitlyn Lott, a forensic DNA analyst, and by Sarah Rothwell, a forensic DNA scientist—both of whom were employed by the Texas Department of Public Safety Crime Laboratory.

Rothwell testified that she tested samples from Appellant's swabs and samples from C.S.'s blood and vaginal swabs. Rothwell testified that, as to the "DNA profile from the sperm fraction of the vaginal swab, suspect Holmes cannot be excluded as the contributor of the major component in the profile" and that the probability of selecting an unrelated person at random to be the source of the major component was "one in 20.62 sextillion"[3] for African-Americans. She opined with a reasonable degree of scientific certainty that Appellant was the source of the major component in the DNA profile.

### III. *Issues Presented*

Appellant first argues that the evidence was insufficient to support a conviction for the lesser included offense of sexual assault. Second, Appellant argues that the trial court abused its discretion when it excluded C.S.'s prior conviction for prostitution.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]Sextillion is a cardinal number represented in the United States by one followed by twenty-one zeros.

IV. *Standard of Review*

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd).

The standard of review for the admission or exclusion of evidence is an abuse of discretion standard, and the trial court is to be afforded wide discretion in ruling on the admissibility of a prior conviction. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). The trial court has the discretion to include or exclude evidence of a victim's prior criminal convictions. *Jones-Jackson v. State*, 443 S.W.3d 400, 402 (Tex. App.—Eastland 2014, no pet). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Even if the trial court gave the wrong reason for its decision, the decision will be upheld as long as it is correct on some theory of law applicable to the case. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

V. *Analysis*

We will first address Appellant's challenge to the sufficiency of the evidence. We will then address his second issue regarding the exclusion of C.S.'s 1999 conviction for prostitution.

*A. Issue One: Sufficiency of the Evidence*

Appellant argues that the evidence at trial was insufficient to support his conviction because C.S.'s actions after the sexual assault did not reflect the actions of a typical sexual assault victim. Appellant further argues that the lack of acute vaginal injury was inconsistent with sexual assault and was evidence of consensual sex and his innocence. Sexual assault victims do not react uniformly. *Shaw v. State*, 764 S.W.2d 815, 818 (Tex. App.—Fort Worth 1988, pet. ref'd) (expert testimony that victims of "acquaintance rape" often remain calm after the assault and delay reporting it). The morning after the sexual assault, C.S. returned to Appellant's apartment and vandalized it, including the air mattress on which she was sexually assaulted; C.S. then left Appellant's apartment with her belongings and later reported the crime to the police. C.S. also took some of Appellant's personal belongings from the apartment because she hoped he would call the police.

C.S. initially went to the hospital for treatment, and the police were called when C.S. explained why she was there. After C.S. reported the sexual assault to the police, she was taken to a different location for a SANE examination. Doyle treated C.S., and Doyle testified that C.S. sustained an injury to her vagina. Appellant claimed there was no assault because there was no acute injury to the labia majora, labia minora, and vagina. But Doyle outlined that, in ninety-four percent of sexual assault cases, there is no acute injury to the labia majora, labia minora, and vagina. Doyle also testified that C.S.'s account was consistent with the injuries she suffered and that those injuries indicated an assault took place.

Detective Rodriguez took C.S.'s statement at the hospital before the sexual assault examination. Detective Rodriguez obtained the results of the examination and logged them into evidence. Detective Sanders testified he took buccal swabs from Appellant as part of an investigation of Appellant. Once the DNA samples

6

were tested, Appellant could not be ruled out as the contributor of the sperm portion from C.S.'s vaginal swab. The probability that the sperm belonged to someone else was at least one in 20.62 sextillion.

C.S. described in detail how Appellant threatened her, tore off her clothes, threw her onto the air mattress in the bedroom, forced her legs apart, and violently penetrated her vagina with his penis without her consent. The jury may believe all, some, or none of a witness's testimony because the jury, as factfinder, is the sole judge of the weight and credibility of the witnesses. *Sharp*, 707 S.W.2d at 614. The jury was free to believe C.S. We defer to the jury's resolution of any conflicting inferences raised in the evidence and presume that the jury resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 894; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). We have reviewed the record, and we hold that a rational jury could have found beyond a reasonable doubt that Appellant sexually assaulted C.S. We overrule Appellant's first issue.

*B. Issue Two: The Exclusion of the Victim's Prior Prostitution Conviction*

Appellant argues he should have been allowed to introduce evidence that C.S. had a prior conviction for prostitution. The trial court forbade Appellant from impeaching C.S. with a remote misdemeanor conviction for prostitution. The trial court found that the probative value of the 1999 conviction was outweighed by its prejudicial effect.

A trial court has the discretion "to impose reasonable restrictions or limits on cross-examination without violating an accused's constitutional right to confront witnesses." *Nevels v. State*, 954 S.W.2d 154, 157 (Tex. App.—Waco 1997, pet. ref'd). Rule 609(a) provides that a witness's character for truthfulness may be attacked by evidence that the witness has been previously convicted of a felony

crime or a crime of moral turpitude, regardless of punishment, if the trial court determines that the probative value of the evidence outweighs its prejudicial effect and the evidence is elicited from the witness or established by a public record. TEX. R. EVID. 609(a); *Jones-Jackson*, 443 S.W.3d at 402; *see also* TEX. R. EVID. 412 (admissibility of evidence of victim's previous sexual conduct). Rule 609(b) limits the reach of Rule 609(a) by providing that a conviction more than ten years old is inadmissible, unless the court determines that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b).

Appellant argues the "tacking" doctrine applies and requires an analysis under the standard of "outweighs," under Rule 609(a), rather than the standard of "substantially outweighs," under Rule 609(b). But the tacking doctrine, as we have recently held, no longer applies, and the "substantially outweighs" standard in Rule 609(b) is the exclusive standard to use to determine the admissibility of C.S.'s remote convictions. *Jones-Jackson*, 443 S.W.3d at 403.

The Court of Criminal Appeals set out the following factors in *Theus* to weigh the value of such evidence: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent criminal history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the witness's testimony, and (5) the importance of the witness's credibility. 845 S.W.2d at 880.

Prostitution is a crime of moral turpitude. *Holgin v. State*, 480 S.W.2d 405, 408 (Tex. Crim. App. 1972); *Husting v. State*, 790 S.W.2d 121, 126 (Tex. App.—San Antonio 1990, no pet.). But the impeachment value of an admission of such a conviction is low in C.S.'s case because such an admission would not have made her allegations less credible, given the other evidence in the case. And, although C.S.'s credibility was an important part of the case, the lack of deception involved

in the remote conviction and the lengthy time period between that conviction and the present trial weighed heavily against the inclusion of the remote conviction for prostitution. In addition, the similarity factor is inapplicable here because C.S. was the victim of the crime. We have weighed all the relevant factors, and we hold that the trial court did not abuse its discretion when it prohibited Appellant from impeaching C.S. with her remote misdemeanor conviction for prostitution. We overrule Appellant's second issue.

## VI. *Conclusion*

We have reviewed the record and hold that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed the offense of sexual assault. We also hold that the trial court did not abuse its discretion when it excluded evidence of C.S.'s remote conviction for prostitution.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


August 21, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

9